# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**EDUCATION MANAGEMENT
SERVICES, L.L.C.,**

      **Plaintiff,**

**v.**

**ERIK SLAIKEU and STEAMBOAT
MANAGEMENT GROUP, L.L.C.,**

      **Defendants.**

**CIVIL NO.  SA-14-CA-135-OLG**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**TO:**   **Honorable Orlando L. Garcia
United States District Judge**

Pursuant to the order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b) and rule 1 of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

---

[1] Docket no. 20 (Apr. 15, 2014).

# TABLE OF CONTENTS

I.      Jurisdiction

II.     Summary of Procedural History, Claims, and Arguments

III.    Standards

        A.      Arbitration

        B.      Statement of a Claim Upon Which Relief Can Be Granted

IV.     Analysis

        A.      Mr. Slaikeu
                1. compel arbitration
                   a. failure to oppose
                   b. the merits
                       i. agreement to arbitrate
                       ii. arbitrability of the claims
                           (a) breach of contract
                           (b) conversion
                           (c) misappropriation of trade secrets
                           (d) alter ego and piercing corporate veil
                   c. conclusion
                2. stay pending arbitration
                3. March 25 and April 22 motions to dismiss or transfer
                4. conclusion

        B.      Steamboat
                1. March 25 motion to dismiss first amended petition
                   a. breach of contract
                   b. conversion
                2. April 22 motion to dismiss second amended complaint
                3. diversity subject matter jurisdiction

V.      Recommendations

VI.     Instructions for Service and Notice of Right to Object Appeal

## I. JURISDICTION

On February 13, 2014, defendant Erik Slaikeu removed plaintiff's first amended petition to this Court from the District Court for the 131st Judicial District Court in Bexar County, Texas,[2] based on federal diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[3] Plaintiff has not challenged federal subject matter jurisdiction.

## II. SUMMARY of PROCEDURAL HISTORY, CLAIMS, and ARGUMENTS

Education Management Services, LLC ("EMS") initiated this case in the 131st Judicial District Court of Bexar County on January 22, 2014, when it filed its original petition naming Mr. Slaikeu as the sole defendant.[4]  Plaintiff's original petition asserts causes of action for breach of contract and conversion based on allegations that plaintiff and Mr. Slaikeu "entered into an agreement entitled 'Contractor Agreement' whereby [Slaikeu] would provide various services on behalf of Plaintiff," Mr. Slaikeu "agreed not to compete with Plaintiff's businesses," and Mr. Slaikeu

> agreed to keep all information obtained during the performance of his duties under the contract confidential and refrain from using Plaintiff's teaching materials, vendor's lists, student testimonials, photographs, and other proprietary

---

[2]  Docket no. 1.

[3]  Id. at 2.  The notice of removal states that it was filed by Mr. Slaikeu, "one of the Defendants," and makes no representation that the second defendant, Steamboat Management Group, LLC ("Steamboat"), joined in the removal.  See id.  Mr. Slaikeu appears to assert Steamboat's express consent to removal was not required for the same reason "Steamboat's presence in this suit does not destroy diversity jurisdiction," namely, "because it is a nominal or improperly joined party." Id. at 2-3. Nevertheless, at the same time, Mr. Slaikeu acknowledges Steamboat is a separate legal entity he formed, in Texas, and, based on Mr. Slaikeu's submissions, it would appear Mr. Slaikeu himself would be authorized to make legally binding representations on behalf of Steamboat, such as joining in a removal.  Plaintiff has not sought remand.

[4]  Id., tab 4 ("original petition") at 2.

information owned by Plaintiff for the use and benefit of [Slaikeu] during and after [Slaikeu] ceased working with Plaintiff's company.[5]

Plaintiff's original petition seeks an award of injunctive relief, actual and punitive damages, attorney's fees, pre and postjudgment interest, an accounting, disgorgement of profits, costs, and any other relief to which it may be entitled.[6]

On February 10, 2014, plaintiff filed its first amended petition in state court, adding Steamboat as a defendant, but otherwise alleging the same two claims—breach of contract and conversion—against both defendants as asserted in the original petition.[7]  In making its averments, plaintiff's first amended petition does not differentiate between the actions of Mr. Slaikeu and Steamboat, collectively referring to "defendants" when setting out the "facts," "causes of action," and "remedy."[8]  More specifically, the first amended petition alleges that "[plaintiff] and defendants entered into an agreement entitled 'Contractor Agreement' whereby Defendants would provide various services on behalf of Plaintiff."[9]  Plaintiff alleges that under the terms of the Contractor Agreement, "Defendants" agreed "not to compete with Plaintiff's businesses," to "keep all information obtained during the performance of [their] duties under the contract confidential," and refrain from using plaintiff's "teaching materials, vendor's lists,

---

[5]  Id.  Plaintiff's original petition did not attach a copy of the Contractor Agreement.

[6]  Id. at 8-9.

[7]  Id., tab 11 ("first amended petition") at 1-9.

[8]  Id.

[9]  Id. at 2.  As plaintiff's original petition, plaintiff's first amended petition does not attach a copy of the Contractor Agreement.

student testimonials, photographs, and other proprietary information . . . after Defendants ceased working with Plaintiff's company."[10]

As the original petition, plaintiff's first amended petition does not assert the date on which the Contractor Agreement was signed, but does aver that "[i]n or about September of 2013, Defendants ceased working with Plaintiff."[11]  Plaintiff alleges that "defendants" subsequently "began working for a rival seminar business, in direct competition with Plaintiff's business," using "information obtained from Plaintiff while under contract with Plaintiff."[12] Plaintiff also alleges that, "in violation of the contractor agreement," "Defendants have used and continue to use various teaching materials and methods obtained by Defendants while under contract with Plaintiff, for their own benefit."[13]  Plaintiff further alleges that "as part of Defendants and Plaintiff's contractor's agreement, Defendants agreed not to solicit, induce, or attempt to induce any past or current supplier, client or customer of the [plaintiff] . . . to do business with any other . . . entity which provides products or performs services materially similar to or competitive with those provided by the Plaintiff."[14]  Plaintiff alleges that "Defendants are currently working with a former vendor/supplier that conducts seminars substantially similar to Plaintiff" in "direct violation of the contract between the parties."[15]

---

[10]  Id.

[11]  Id.

[12]  Id.

[13]  Id.

[14]  Id.

[15]  Id.

On February 13, 2014 (three days after plaintiff filed its first amended petition in state court), Mr. Slaikeu filed a notice of removal, removing plaintiff's case to this Court.[16]  The removal petition asserts the basis of removal as federal diversity jurisdiction and alleges that plaintiff's naming of Steamboat, a Texas limited liability corporation as a defendant in the first amended petition, does not destroy complete diversity because Steamboat is not a real party in interest and was joined for the improper purpose of defeating diversity jurisdiction.[17]  Mr. Slaikeu attaches to the removal petition his affidavit in which he admits he signed a "Contractor Agreement" with plaintiff to govern his work, as an independent contractor for plaintiff in Texas.[18]  With respect to the status of Steamboat, Mr. Slaikeu testifies he formed the limited liability company in Texas using his parents' Texas residence address as its registered office and, further:

- he created Steamboat as "an entity for tax purposes through which [he] could manage business expenses;"

- "Steamboat was never an operating company and is a company in name only for me to obtain insurance and manage other expenses;"

- "[t]here was never any agreement signed between Steamboat and the Plaintiff;"

- Steamboat "did nothing and it conducted no business;" and

- "[t]he LLC documents for Steamboat were not filed until February 22, 2013—well after the Contractor Agreement was signed."[19]

---

[16]  Docket no. 1.

[17]  Id. at 3-5.

[18]  Id., exhibit 1.

[19]  Id.

6

On March 25, 2014, Mr. Slaikeu filed: (a) a combined motion to compel arbitration and stay pending arbitration;[20] and (b) a combined motion to dismiss or transfer venue, subject to the motion to compel arbitration.[21]  With respect to his motion to compel arbitration and stay, Mr. Slaikeu argues, in sum, that each of the two claims plaintiff asserts against him in plaintiff's first amended petition—breach of contract and conversion—fall within the scope of a mandatory arbitration clause included in an agreement "Slaikeu executed . . . with Plaintiff in January 2013."[22]  Mr. Slaikeu submits a single exhibit in support of his request for arbitration and stay, a copy of a  "Contractor Agreement," dated January 18, 2013, which bears no signatures,[23] but identifies the parties to the contract as plaintiff ("the Company") and Erik Slaikeu ("Contractor"); the Contractor Agreement does not identify or mention Steamboat.[24]   The Contractor Agreement includes the following provision:

> 4.1  **Disputes Will be Arbitrated**.  Any controversy between Contractor and the Company . . . arising from or in any way related to this Agreement, Contractor's business relationship with the Company . . . or the termination of Contractor's business relationship with the Company . . . shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association

---

[20]  Docket no. 11.

[21]  Docket no. 12.

[22]  Docket no. 11 at 1.

[23]  Mr. Slaikeu asserts, in the text of the unsworn removal petition, that "Slaikeu executed a contractor agreement with Plaintiff in January 2013." Id.   Mr. Slaikeu further asserts "Slaikeu does not have an executed copy of the Contractor Agreement." Id. at n.1.   Mr. Slaikeu also states: "Slaikeu notes that to date the Plaintiff has not produced a signed copy of the Contractor [A]greement either." Id.  As noted below, plaintiff attaches a copy of the Contractor Agreement, signed by Mr. Slaikeu, to its second amended complaint.  See docket no. 14, exhibit D.

[24]  Docket no. 11 at 1 and exhibit A.

under its rules then applicable to the dispute.  Any arbitration shall take place only
in San Antonio, Texas, or as otherwise mutually agreed by the Parties.[25]

Mr. Slaikeu argues that because plaintiff's claims of breach of contract and conversion arise from

or relate to the Contractor Agreement, they must be arbitrated under the mandatory arbitration

provision in that Agreement.[26]

      With respect to his combined motion to dismiss or transfer venue (subject to his motion

to compel arbitration and stay), Mr. Slaikeu argues that plaintiff's claims should be dismissed for

failure to state a claim upon which relief may be granted or, alternatively, transferred to the

United States District Court for the Central District of California, Southern Division, the district

and division encompassing the place where Mr. Slaikeu resides.[27]  In support, Mr. Slaikeu

submits one exhibit: a copy of the unsigned, undated copy of the Contractor Agreement.[28]

      On the same day Mr. Slaikeu filed the motions noted above, Steamboat filed a motion to

dismiss plaintiff's claims alleged against it in the first amended petition.[29]  Steamboat argues

plaintiff has not stated a claim for breach or contract of conversion against Steamboat because, in

sum:

- "Steamboat was not even in existence at the time the Contractor Agreement was executed;"

---

[25] Id. at 2.

[26] Id. at 5-6.

[27] Docket no. 12 at 1-7.

[28] Id., exhibit A.

[29] Docket no. 13.

8

- "Steamboat is a limited liability company that Slaikeu set up solely to facilitate business expenses and taxes.  It is not an operating company.  It has no employees or assets;"

- Steamboat "never signed any agreements with Plaintiff;" and

- "[p]laintiff never did nay business with Steamboat, and Slaikeu has not conducted business in the name of 'Steamboat' since leaving the relationship with Plaintiff."[30]

Accordingly, Steamboat asks the Court to dismiss it from the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[31]

After defendants filed the motions noted above, on April 8, 2014, plaintiff filed its second amended complaint.[32]  Many of the averments in the second amended complaint are the same as that alleged in the first amended petition and the second amended complaint also alleges causes

---

[30] Id. at 3.

[31] Id. at 4.

[32] Docket no. 14 ("second amended complaint").  Plaintiff did not file a motion seeking leave to amend at the time it filed its second amended complaint.  Pursuant to Rule 15, Fed.R.Civ.P., a party may amend its pleadings once as a matter of course within 21 days after serving it or within 21 days after service of either a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier.  According to the information submitted with the notice of removal, no defendant had filed an answer to plaintiff's original petition or first amended petition in state court prior to removal.  See docket no. 1, tab 1.  Although plaintiff's second amended complaint was filed within 21 days of the filing of defendants' Rule 12(b) motions to dismiss, plaintiff had already amended once in state court and has submitted no authority to show that its first amended petition filed in state court should not be considered its first amendment "as a matter of course" within the meaning of Rule 15.  Plaintiff does not represent any defendant has consented to the filing of the second amended complaint.  Generally, an amended complaint filed without consent of the adverse parties or leave of court is a nullity.  Friedman v. Village of Skokie, 763 F.2d 236, 239 (7th Cir. 1985).  Accordingly, plaintiff's second amended complaint should be **stricken** from the record. Nevertheless, in the interest of providing a comprehensive report to the District Judge, this report considers each of the four causes of action asserted in plaintiff's second amended complaint (two of which are the same as asserted in the first amended petition) when addressing defendants' motions to compel arbitration, stay, dismiss, and transfer.

of action for breach of contract and conversion against each defendant; but, the second amended complaint asserts two additional causes of action against both defendants: trade secret misappropriation and "alter ego and piercing defendants' (*sic*) corporate veil."[33]  Plaintiff attaches to the second amended complaint a copy of the "Contractor Agreement" dated January 18, 2013, which appears to be identical to the copy of that agreement submitted by Mr. Slaikeu, except that the copy submitted by plaintiff is signed by Mr. Slaikeu.[34]  Plaintiff's second amended complaint alleges Mr. Slaikeu individually signed the Contractor Agreement and agreed to its terms, but  also alleges "Defendant Slaikeu*, and his alter-ego*, [Steamboat,] entered into and performed services under [the] 'Contractor Agreement.'"[35]

The factual allegations in plaintiff's second amended complaint in support of the causes of action for breach of contract and conversion are essentially the same as asserted in the first amended petition.  In support of the cause of action for trade secret misappropriation added in the second amended complaint, plaintiff alleges, in sum, that "defendants have taken and used information that constitutes [plaintiff's] Trade Secrets," and "Defendants were provided access to this confidential information pursuant to the terms of [the] written Contractor Agreement with Plaintiff . . . including provisions of confidentiality[.]"[36]  In support of the cause of action for "alter ego and piercing defendants' (*sic*) corporate veil," plaintiff alleges, in sum, that: Steamboat and Mr. Slaikeu "are the alter ego of one another;" Mr. Slaikeu "has failed to observe the proper

---

[33]  Id.

[34]  Plaintiff's second amended complaint at exhibit D.

[35]  Id. at 4 (emphasis added).

[36]  Id. at 7.

formalities, has commingled funds, and runs [Steamboat] interchangeably with his own personal activities;" "upon information and belief," Mr. Slaikeu has used Steamboat "to perform actual fraud upon [plaintiff];"[37] and Steamboat "is/was a party to the second Contractor Agreement entered between Defendant Slaikeu and Plaintiff[.]"[38]

On the same day plaintiff filed its second amended complaint, plaintiff filed its response to Mr. Slaikeu's March 25 motion to dismiss or transfer venue and a separate response to Steamboat's March 25 motion to dismiss.[39]   In its response to the March 25 motion to dismiss, plaintiff, without any discussion of the facts alleged, argues: (1) "since a large and substantial portion of events giving rise to the Plaintiff's claims occurred in the Western District of Texas, venue is proper;"[40] and (2) "Plaintiff's First Amended Complaint and Plaintiff's Second Amended Complaint contain factual allegations to state a plausible claim for the causes of action therein," but "in the event that the Court deems Plaintiff's Complaint insufficient, Plaintiff prays that any dismissal be without prejudice and that the Court grant Plaintiff leave to file an amended complaint before dismissing its claim against Defendants."[41]   Plaintiff did not file a response to Mr. Slaikeu's March 25 motion to compel arbitration and stay.  On April 15, 2014, Mr. Slaikeu and Steamboat each filed reply briefs in support of their March 25 motions to dismiss.[42]

---

[37] Id. at 8.

[38] Id.

[39] Docket nos. 15, 16.

[40] Docket no. 15 at 5.

[41] Id. at 6-7.

[42] Docket nos. 18, 19.

On April 22, 2014, Mr. Slaikeu filed a combined motion to dismiss and transfer venue (subject to his March 25 motion to compel arbitration) directed at plaintiff's second amended complaint.[43]  Mr. Slaikeu advanced three main arguments: (1) venue is not proper in the Western District of Texas because the alleged actions giving rise to all three claims (retaining and using plaintiff's trade secret materials, and working for a rival company) would have occurred in California, where Mr. Slaikeu resides, and not in Texas;[44] (2) plaintiff's claims for breach of contract and conversion should be dismissed under Rule 12(b)(6) because, respectively, there are no factual averments to support breach-of-contract damages or the identity of the confidential materials allegedly converted;[45] and (3) plaintiff's trade secret misappropriation claim should be dismissed under Rule 12(b)(6) because it is not independent of the breach-of-contract claim.[46]

The same day, Steamboat filed a motion to dismiss plaintiff's second amended complaint.[47]  Steamboat advances three main arguments: (1) the second amended complaint "makes nothing more than conclusory allegations against Steamboat by collectively referring to it with Slaikeu as 'Defendants;'"[48] (2) it was not a party to the Contractor Agreement and owes no duties to plaintiff under that agreement;[49] and (3) its liability for each claims asserted against it in

---

[43] Docket no. 23.

[44] Id. at 4-5.

[45] Id. at 5-7.

[46] Id. at 7-8.

[47] Docket no. 24.

[48] Id. at 5.

[49] Id.

the second amended complaint essentially are dependent on plaintiff's claim or theory of "alter ego/veil piercing," but plaintiff has not pleaded sufficient facts to show Steamboat is the alter ego of Mr. Slaikeu.[50]  Plaintiff has not filed a response to either defendant's April 22 motions.

## III.  STANDARDS

### A.    Arbitration

The Federal Arbitration Act ("FAA") generally governs arbitration provisions in contracts involving interstate commerce[51] and creates a "federal policy favoring arbitration."[52]  The FAA provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[53]  The FAA authorizes the court to compel arbitration when "there has been a failure, neglect, or refusal to comply with the arbitration agreement."[54]  The FAA allows for a stay of proceedings if a court finds an issue is arbitrable under the terms of the arbitration agreement,[55] and, if all issues are subject to arbitration, the claims can be dismissed in favor of the arbitration proceedings.[56]

---

[50]  Id.

[51]  9 U.S.C. § 9.

[52]  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983).

[53]  9 U.S.C. § 2.

[54]  9 U.S.C. § 4.

[55]  9 U.S.C. § 3.

[56]  Fedmet Corp. v. M/V BUYALYK, 194 F.3d 674, 679 (5th Cir. 1999); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992).

Generally, when determining whether to compel arbitration, the court should first determine whether the parties agreed to arbitrate the dispute and then whether the issues raised are within the scope of that agreement.[57]  "When deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'"[58]  Nevertheless, "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'"[59]

**B.      Statement of a Claim Upon Which Relief Can Be Granted**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, in turn, requires the plaintiff to state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law.[60]  When considering whether the plaintiff has failed to state a claim, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the

---

[57]  Texaco Exploration & Prod. Co. v. AmClyde Engineered Prod. Co. Inc., 243 F.3d 906, 909 (5th Cir. 2001); Harvey v. Joyce, 199 F.3d 790, 793 (5th Cir. 2000).

[58]  Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924 (1995)).

[59]  Id. (quoting Volt Info. Sci., Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1253-54 (1989); see also Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. at 941 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

[60]  FED. R. CIV. P. 12(b)(6).

plaintiff.'"[61]  To withstand a Rule 12(b)(6) motion, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[62]

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets out the fundamental pleading standard for civil litigation and governs all claims in a civil suit, requiring "a short plain statement of the claim showing that the pleader is entitled to relief."[63]  Although "heightened fact pleading of specifics"[64] may not be adopted when not authorized by the Federal Rules of Civil

---

[61] In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999); Chehardy v. Allstate Indem. Co., 552 U.S. 1182, 128 S. Ct. 1231 (2008)), cert. denied sub nom, Xavier Univ. of La. v. Travelers Cas. Prop. Co. of Am, 552 U.S. 1182, 128 S. Ct. 1230 and Chehardy v. Allstate Idem. Co., 552 U.S. 1182, 128 S. Ct. 1231 (2008).

In Katrina Canal Breaches, 495 F.3d at 205 n.10, the United States Court of Appeals for the Fifth Circuit acknowledged the United States Supreme Court's abrogation of the "no set of facts" standard for determining the adequacy of a pleading in Bell Atlantic Corp. v. Twombly, a Sherman Act case:

> We have often stated that a claim should not be dismissed under Rule 12(b)(6) unless the plaintiff would not be entitled to relief under any set of facts or any possible theory he may prove consistent with the allegations in the complaint. See, e.g., Martin K. Eby Constr., 369 F.3d at 467 (quoting Jones, 188 F.3d at 324). This standard derived from Conley v. Gibson, which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). But recently in Bell Atlantic, the Supreme Court made clear that the Conley rule is not "the minimum standard of adequate pleading to govern a complaint's survival." 127 S.Ct. at 1968-69.

[62] Id. at 205 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570-72, 127 S. Ct. 1955, 1974 (2007)).

[63] FED. R. CIV. P. 8(a)(2).

[64] Twombly, 550 U.S. at 570, 127 S.Ct. at 1974.

Procedure,[65] the complaint taken as a whole "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory"[66] and a plaintiff's pleading obligation includes the twin requirements of fact-based pleading and plausibility.  More specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause  of action will not do."[67]  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."[68]  Although the Supreme Court in Twombly stressed that it did not impose a probability standard at the pleading stage, nevertheless, the allegation of a mere possibility of relief does not satisfy the threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief.[69]

---

[65]  See, e.g., Fed. R. Civ. P. 9(b) (allegations of fraud or mistake to be stated with particularity); Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508, 122 S. Ct. 992 (2002) ("[A] complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792[, 93 S. Ct. 1817, 36 L.Ed.2d 668] (1973).").

[66]  Twombly, 550 U.S. at 562, 127 S. Ct. at 1969 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

[67]  Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (2007)).

[68]  Id. at 555, 127 S. Ct. at 1965 (as quoted in Katrina Canal Breaches, 495 F.3d at 205).

[69]  Id. at 557, 127 S. Ct. at 1966.  See also Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S. Ct. 1937, 1953 (2009) (rejecting the argument that the Twombly plausibility pleading standard applied only in antitrust cases and expressly holding the standard applies "all civil actions.").

When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all of the factual allegations contained in the complaint.[70] But, a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," which will not defeat a Rule 12(b)(6) motion to dismiss.[71] In <u>Iqbal</u>, the Court formalized a two-pronged approach to apply the underlying jurisprudential principles of <u>Twombly</u>.[72] The first prong required the Court to separate factual allegations from legal conclusions. The Court dismissed those allegations deemed to be "conclusory" on the basis that bare legal conclusions are not entitled to the privilege that all well-pleaded facts be taken as true at the motion to dismiss stage.[73] The second prong then applied the plausibility test to the remaining allegations.[74] That

---

[70] 550 U.S. at 555, 127 S. Ct. at 1965 (citing <u>Swierkiewicz</u>, 534 U.S. at 508 n.1, 122 S. Ct. at 996 n.1; <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-37, 109 S. Ct. 1827, 1832 (1989); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).

[71] <u>Plotkin v. IP Axess, Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005) (citing <u>Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.</u>, 365 F.3d 353, 361 (5th Cir. 2004)).

[72] <u>Twombly</u>, 556 U.S. at 677-79, 129 S. Ct. at 1949-50.

[73] <u>Id.</u> <u>Iqbal</u> illustrated its analysis of the first prong as follows:
We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." Complaint ¶ 96, App. to Pet. for Cert. 173a-174a. The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, id., ¶ 10, at 157a, and that Mueller was "instrumental" in adopting and executing it, id., ¶ 11, at 157a. These bare assertions, much like the pleading of conspiracy in <u>Twombly</u>, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, 550 U.S., at 555, 127 S. Ct. 1955, namely, that petitioners adopted a policy " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." <u>Feeney</u>, 442 U.S., at 279, 99 S. Ct. 2282. As such, the allegations are conclusory and not entitled to be assumed true. <u>Twombly</u>, *supra*, 550 U.S., at 554-555, 127 S. Ct. 1955. To be clear, we do not reject these bald allegations on the ground that they are

two-pronged approach is now the standard for evaluating the plausibility of a complaint under Rule 8(a)(2).

## IV.  ANALYSIS

### A.    Mr. Slaikeu

It is well-settled in the Fifth Circuit that when a trial court is presented concurrently with a motion to dismiss and a motion to compel arbitration, the court first should consider the motion to compel arbitration.[75]  "If the dispute is within the scope of the arbitration clause, the court may not delve further into the merits of the dispute."[76]  If the court compels arbitration, in addition to not addressing Mr. Slaikeu's motions to dismiss for failure to state a claim, the Court need not address his alternative motions to transfer based on improper venue.[77]  Accordingly, this report first addresses Mr. Slaikeu's motion to compel arbitration.[78]

---

unrealistic or nonsensical.  We do not so characterize them any more than the Court in Twombly rejected the plaintiffs' express allegation of a " 'contract, combination or conspiracy to prevent competitive entry,'" id., at 551, 127 S. Ct. 1955, because it thought that claim too chimerical to be maintained.  It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

Id. at 680-81, 129 S. Ct. at 1951.

[74] Id. (although the Court must "take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

[75] See, e.g.,  Webb v. Investacorp, Inc., 89 F.3d 252, 260 (5th Cir. 1996).

[76] Snap-On Tools Corp. v. Mason, 18 F.3d 1261, 1267 (5th Cir. 1994) (quoting Municipal Energy Agency v. Big Rivers Elec. Corp, 804 F.2d. 338, 342 (5th Cir. 1986)).

[77] Hinnant v. American Ingenuity, LLC, 554 F.Supp.2d 576, 588 n. 10 (E.D. Pa. 2008).

[78]  Mr. Slaikeu's March 25 motion to compel arbitration was filed when plaintiff's "live" pleading was plaintiff's first amended petition.  Mr. Slaikeu did not file a second motion to compel

1.      **compel arbitration**

        a. **failure to oppose**

Mr. Slaikeu filed his motion to compel arbitration on March 25, 2014.[79]  Plaintiff has not

filed a response or opposition to the motion and the time for responding has expired.

Accordingly, Mr. Slaikeu's motion to compel arbitration should be **granted** and plaintiff should

be required to arbitrate each of plaintiff's claims against Mr. Slaikeu pursuant to the provisions

of the Contractor Agreement. [80]

---

arbitration after plaintiff filed its second amended complaint to make it clear that he was seeking to compel arbitration of all claims against him.  This procedural irregularity appears to be immaterial. First, as discussed, plaintiff's second amended complaint should be stricken from the record. Second, even if the second amended complaint is not considered to be a "nullity" and stricken from the record, the four causes of action asserted against Mr. Slaikeu in the second amended complaint (again, two of the causes of action are the same as those asserted in the first amended petition) are controversies "arising from or in any way related to this [Contractor] Agreement, Contractor's business relationship with the Company . . . or the termination of Contractor's business relationship with the Company" such that they must be submitted to "final and binding arbitration" as provided in the Contractor Agreement.  Third, plaintiff did not file any response or opposition to Mr. Slaikeu's motion to compel arbitration and, therefore, has failed to advance argument and authority to show why any claim it asserts against Mr. Slaikeu is not required to be arbitrated.

[79]  Docket no. 11.

[80]  Unlike the situation addressed in Webb v. Morella, No. 11-30175, 2012 WL 45411 at *2, n.4 (5th Cir. Jan. 9, 2012), in which the Fifth Circuit held that it was improper to dismiss plaintiff's claims with prejudice for failure to respond in accordance with the local rules, here plaintiff filed a number of submissions, including responses to motions to dismiss and a second amended complaint such that there is little concern plaintiff simply missed a deadline.  See also docket no. 23 at 1 n.1 (plaintiff's failure to respond to Mr. Slaikeu's motion to compel arbitration was expressly noted). Also, this report includes a discussion of the substance of Mr. Slaikeu's motion to compel arbitration which shows the request has merit.

### b.  the merits

If it is necessary or appropriate for the Court to consider the merits of Mr. Slaikeu's motion to compel arbitration, notwithstanding plaintiff's failure to oppose the request, the Court includes the following brief discussion of the merits.

### i.  agreement to arbitrate

The threshold question is whether there is a valid written agreement to arbitrate the claims in this case.  Here, the Contractor Agreement, which includes the arbitration clause at issue, embodies the contract between plaintiff and Mr. Slaikeu.  If the Contractor Agreement is invalid, so is the arbitration clause.  But neither party disputes the validity of the Contractor Agreement.  Plaintiff relies on the Contractor Agreement in support of its claims.[81]  Mr. Slaikeu repeatedly references the parties' execution of the Contractor Agreement, and, obviously, alleges the validity of the arbitration clause.[82]  Because the validity of the Contractor Agreement is not in dispute, and no argument has been raised denying the validity of the arbitration provision,[83] the court will consider the arbitration provision valid.

Having found that the arbitration provision is valid, the next area of analysis is whether plaintiff's claims are within the scope of the Contractor Agreement's arbitration provision.  The arbitration provision applies to "[a]ny controversy . . . arising from or in any way related to this

---

[81]  See plaintiff's original petition; plaintiff's first amended petition; second amended complaint at 3-6 and exhibit D.

[82]  Docket no. 12 at 1, 2; docket no. 18 at 2; docket no. 23 at 2 .

[83]  Further, the doctrine of equitable estoppel would prohibit the plaintiff from denying the validity of the arbitration provision because plaintiff seeks relief under the contract. See Washington Mut. Finance Group, LLC v. Bailey, 364 F.3d 260, 267 (5th Cir. 2004).

Agreement, [Mr. Slaikeu's] business relationship with [plaintiff], or the termination of [Mr. Slaikeu's] business relationship with the [plaintiff]."[84]  Critical here is the phrase "arising from or in any way related to."  The Fifth Circuit interprets arbitration provisions with similar language as "broad [and] capable of expansive reach,"[85] and intended "to reach all aspects of the relationship."[86]  A broad arbitration clause like this one "[is] not limited to claims that literally 'arise under the contract,' but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."[87]  The Fifth Circuit further has held that "[w]ith such a broad arbitration clause, it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable."[88]  And, interpreting the specific term "relate to," the Fifth Circuit held that a claim "relates to" the contract if "the subject matter of the litigation has some connection, has some relation, [or] has some reference" to the contract.[89]

### ii.  arbitrability of the claims

If there is a valid agreement to arbitrate, then the Court must address whether the claims at issue fall within the scope of the arbitration agreement.  Plaintiff asserted two causes of action

---

[84]  Docket no. 11 at exhibit 1; second amended complaint at exhibit D.

[85]  Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998).

[86]  Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 165 (5th Cir. 1998) (citation omitted).

[87]  Pennzoil Exploration, 139 F.3d at 1067.

[88]  Id. at 1068.

[89]  Acosta v. Master Maintenance & Constr., Inc., 452 F.3d 373, 378-79 (5th Cir. 2006).

against Mr. Slaikeu in the first amended petition—breach of contract and conversion—and re-asserted the same two claims in the second amended complaint four causes of actions as well as adding claims for misappropriation of trade secrets and alter ego/piercing the corporate veil.

### (a)  breach of contract

With respect to plaintiff's breach of contract claim, Mr. Slaikeu argues simply that "[i]t is evident that the breach of contract claim is covered by the arbitration provision."[90]  As alleged in the first amended petition, Mr. Slaikeu's contractual duties are created by the Contractor Agreement:

> Plaintiff . . . and [defendant] entered into an agreement entitled 'Contractor Agreement' whereby [defendant] would provide various services on behalf of Plaintiff.  *Under the terms of the agreement*, [defendant] agreed not to compete with Plaintiff's businesses.  In addition, [defendant] agreed to keep all information obtained during the performance of his duties under the contract confidential and refrain from using Plaintiff's teaching materials, vendor's lists, student testimonials, photographs, and other proprietary information owned by Plaintiff for the use and benefit of [defendant] during and after [defendant] ceased working with Plaintiff's company.[91]

The first amended petition reiterates that Mr. Slaikeu's alleged duty not to compete is an obligation established by the Contractor Agreement: "*[A]s part of [the] contractor's agreement*, [defendant] agreed not to . . . do business with any other [competing] entity[.]"[92]

The alleged breach by Mr. Slaikeu relates to these duties established by the Contractor Agreement: "Defendant[] continue[s] to use Plaintiff's property and confidential information *in*

---

[90]  Docket no. 11 at 5.

[91]  Plaintiff's original petition at 2-3.

[92]  Id.

*violation of the contractor agreement* by and between Plaintiff and Defendant[].”[93]  As to the

duty not to compete, “Defendant[] [is] currently working with a former vendor/supplier that

conducts seminars substantially similar to Plaintiff. [This] intentional, malicious, and fraudulent

action[] by Defendant[] [is] *in direct violation of the contract between the parties*[.]”[94]

Plaintiff’s claim for breach of contract, based on contractual non-disclosure and non-

compete duties, clearly “aris[es] from” the Contractor Agreement.[95]  Further, plaintiff’s breach of

contract claim is “related to . . . the termination of the [defendant’s] business relationship with

[the plaintiff].”  Therefore, plaintiff’s breach of contract claim is covered by the arbitration

provision and should be arbitrated.

### (b)  conversion

Mr. Slaikeu argues that plaintiff’s claim for conversion “arise[s] out of the Contractor

Agreement” because the agreement governs his receipt and use of plaintiff’s allegedly-converted

property.[96]  Indeed, plaintiff alleges that Mr. Slaikeu “ha[s] used and continue[s] to use various

---

[93]  Id. (emphasis added).

[94]  Id. (emphasis added).

[95]  See VDV Media Corp. v. RELM Wireless, No. 3:05-CV-1877-H, 2006 WL 462436, at
*2 (N.D.Tex. Feb. 7, 2006)  (“Plaintiff’s claim for breach of contract is based on [an] alleged
violation of the IRA Agreement’s covenant not to compete.  An alleged breach of the IRA
Agreement is a claim clearly and indisputably ‘arising under’ the Agreement and is thus subject to
the Agreement’s arbitration clause.”) (internal citation omitted); Corporate Relocation, Inc. v.
Martin, No. 3:06-cv-232-L, 2006 WL 4101944, at *7 (N.D.Tex. Sept. 12, 2006) (“The [breach of
contract] claim, centering upon [defendant’s] alleged breaches or threatened breaches of the
confidentiality and noncompete provisions contained in the Employment Agreement, qualifies as a
‘dispute, claim or controversy relating to or arising out of this Agreement (or the breach thereof),’
and shall be settled by final, binding, and non-appealable arbitration.”).

[96]  Docket no. 11 at 6.

teaching materials and methods *obtained by [him] while under contract with Plaintiff*, for [his]

own benefit."[97]   Plaintiff further alleges that Mr. Slaikeu "*agreed to . . . refrain from using*

Plaintiff's teaching materials, vendor's lists, student testimonials, photographs, and other

proprietary information owned by Plaintiff *for the use and benefit of [defendant] during and*

*after [defendant] ceased working with Plaintiff's company*.[98]   Plaintiff's conversion claim

therefore "fundamentally depend[s] on a finding that the defendants did not act properly under

their agreements" and so is "directly based on and closely related to" the Contractor Agreement.[99]

Plaintiff's conversion claim also "require[s] reference to the Agreement as a legal matter or [is]

based on a breach of the Agreement."[100]   Plaintiff's claim for conversion arises from, and is

related to, the Contractor Agreement and the termination of Mr. Slaikeu's business relationship

with plaintiff and should be arbitrated.

### (c)  misappropriation of trade secrets

Mr. Slaikeu's argument that the breach of contract and conversion claims "arise from" the

Contractor Agreement applies equally to plaintiff's claim for trade secret misappropriation.

---

[97]  Plaintiff's second amended complaint at 5 (emphasis added).

[98]  Plaintiff's original petition at 3.

[99]  Cohen v. Brooke Corp., No. SA-07-CA-594-OG, 2007 WL 4556667, at *3 (W.D.Tex. Dec. 18, 2007) (holding claims for breach of fiduciary duty, fraud, civil conspiracy and fraudulent concealment "related to" and "touch[ed] matters covered by" the franchise agreement).

[100]  Osteomed, L.P. v. Koby Industries, L.P., No. 3:06-CV-1045-K, 2006 WL 3392194, at *2 (N.D.Tex. Nov. 20, 2006) (holding conversion claim based on defendants' alleged manufacture of knock-off products "arise[s] out" of parties' product purchase and royalty agreement and therefore was arbitrable); See also Century Satellite, Inc. v. Echostar Satellite, L.L.C., 395 F.Supp.2d 487, 491 (S.D.Tex. 2005) (holding conversion claim based on defendant's alleged failure to make residual payments under retailer agreements "relate[s] to the parties' relationship with each other" and therefore was covered by arbitration provision).

Plaintiff alleges in its second amended complaint that Mr. Slaikeu "acquired [confidential and trade secret] information *knowing that it was protected*" and he was "provided access to this confidential information *pursuant to the terms of his written Contractor Agreement* with Plaintiff . . . including provisions of confidentiality[.]"[101]  Mr. Slaikeu's alleged duty to maintain the secrecy of plaintiff's trade secret materials and information undoubtedly arises from the non-disclosure requirements of the Contractor Agreement.  "A duty not to reveal another party's business information . . . does not arise in a vacuum."[102]  Further stating its claim for trade secret misappropriation, Plaintiff alleges that "[f]ollowing termination of [the Contractor Agreement], [Mr. Slaikeu] *w[as] not authorized to use and/or disclose* said confidential information and trade secrets."[103]  Thus the alleged restriction on Mr. Slaikeu's use of plaintiff's confidential information and trade secrets after termination of the Contractor Agreement arises from or relates to the agreement,[104] or to the termination of the parties' business relationship.  Therefore, plaintiff's claim for trade secret misappropriation falls within the scope of the arbitration provision and should be arbitrated.

---

[101]  Plaintiff's second amended complaint at 7 (emphasis added).

[102]   VDV Media Corp., 2006 WL 462436 at *3 (finding that plaintiff's claim for misappropriation of trade secrets "arises . . . under" the nondisclosure provision in the parties' contract and therefore was subject to arbitration).

[103]  Id. (emphasis added).

[104]   See FCI USA, Inc. v. Tyco Electronics Corp., No. 2:06-CV-128(TJW), 2006 WL 2037557, at *2 (E.D. Tex. July 18, 2006) ("Because the use of confidential information was a term of the contract, the misappropriation of trade secrets based on information received during the relationship governed by the contract 'involv[es] a term' of the contract within the scope of the Arbitration Clause.")

### (d)  alter ego and piercing corporate veil

Allegations that an alter ego relationship exists between two parties or that a corporate veil should be pierced do not constitute separate claims, but merely present a theory how one defendant can be held liable for the actions of another.[105]   There can be no recovery against Mr. Slaikeu for "alter ego and piercing defendants' (*sic*) corporate veil" in itself; if plaintiff recovers damages in this lawsuit from Mr. Slaikeu, it will be because it prevails on any of the other three claims, all of which, as discussed above, should be compelled to arbitration.  Because plaintiff's "claim" of alter ego/piercing a corporate veil is premised on the other three causes of action which each, in turn, relate to the Contractor Agreement and fall within the scope of its arbitration clause, plaintiff also should be required to arbitrate this theory/claim.

### c.  conclusion

Mr. Slaikeu asks for enforcement of the arbitration clause in the Contractor Agreement. Plaintiff does not dispute the validity of the Contractor Agreement or the applicability of its arbitration provision which requires "final and binding arbitration" of all issues relating to the Agreement and Mr. Slaikeu's work for plaintiff.   Each of plaintiff's claims—whether stated in plaintiff's first amended petition or second amended complaint—fall within the scope of the applicable arbitration clause.  Therefore, Mr. Slaikeu's motion to compel arbitration should be **granted** and plaintiff should be required to arbitrate the claims it asserts against Mr. Slaikeu.

---

[105]   See, e.g., Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1035 (5th Cir. 2006) ("Piercing the corporate veil is not a separate cause of action[.]"); Residencial Santa Rita, Inc., v. Colonia Santa Rita, Inc., No. 04-06-00778-CV, 2007 WL 2608564, at *2 n.1 (Tex.App.–San Antonio Sept. 12, 2007, no pet.) (mem. op.) ("alter ego" issue  is "not a separate claim, but only a theory."); El Paso Natural Gas Co. v. Berryman, 858 S.W.2d 362, 364 (Tex. 1993) (observing that liability based on alter ego theory is derivative and depends on another party's liability).

### 2. stay pending arbitration

Mr. Slaikeu moves to stay the proceedings in this case pending arbitration.[106]  Section 3

of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending, upon being satisfied that the
> issue involved in such suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial of the action
> until such arbitration has been had in accordance with the terms of the agreement,
> providing the applicant for the stay is not in default in proceeding with such
> arbitration.[107]

If arbitration is required and a lawsuit has been filed, § 3 mandates the lawsuit be stayed.[108]  But,

if all claims must be arbitrated, there is no purpose for a stay.[109]  Because each of plaintiff's

claims against Mr. Slaikeu must be arbitrated, and the arbitration clause provides for "final and

binding arbitration," there is no purpose for a stay.  Therefore, Mr. Slaikeu's motion for stay

should be **denied**.[110]

---

[106]  Docket 11 at 1.

[107]  9 U.S.C. § 3.

[108]  See Alford, 975 F.2d at 1164.

[109]  See Fedmet Corp., 194 F.3d at 678 (citing Alford, 975 F.2d at 1164 ("Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration.  Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.  Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.")); see also Esta Brook v. Piper Jaffray Co., 492 F.Supp.2d 922, 928 (N.D. Ill. 2007); Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc., 636 F.Supp. 750, 757 (D. Puerto Rico 1986).

[110]  As in Alford, a case in which the Fifth Circuit affirmed a district court's dismissal with prejudice, no party has demonstrated that a dismissal with prejudice would preclude the parties from

### 3.     March 25 and April 22 motions to dismiss or transfer

If a claim must be arbitrated, a court need not consider a pending 12(b)(6) motion to dismiss it.[111]   Additionally, when all claims have been compelled to arbitration, a pending motion to dismiss or transfer on the basis of improper venue is considered moot.[112]   Because plaintiff must arbitrate each of the claims it asserts against Mr. Slaikeu, the Court need not address Mr. Slaikeu's alternative motion to dismiss or transfer venue.   Therefore, both Mr. Slaikeu's March 25 and April 11 motions to dismiss or transfer should be **denied without prejudice as moot**.

### 4.     conclusion

In sum, Mr. Slaikeu's motion to compel arbitration of each of plaintiff's claims asserted against him (whether stated in the first amended petition or second amended complaint) should

---

initiating any new cause of action to seek judicial review of the arbitrator's award in any manner prescribed by law.  975 F.2d at 1164.

[111]   See Hernandez v. Jobe Concrete Products, Inc., 282 F.3d 360 (5th Cir. 2002) (affirming trial court's granting motion to compel arbitration and consequently dismissing 12(b)(6) motion as moot); Grether v. South Point Cadillac/Pontiac, No. A-13-CA-1069-SS, 2014 WL 1350907, at *3 (W.D.Tex. April 3, 2014) ("Because the Court grants the motion to compel arbitration and dismisses the case with prejudice, [defendant's] motion to dismiss is dismissed as moot.") (emphasis removed).

[112]   See Hinnant, 554 F.Supp.2d at 588 n. 10 (listing federal court cases in which court's granting motion to compel arbitration rendered venue challenges moot); Niblet v. Gulfstream Aerospace, No. 3:10-CV-0120-K, 2010 WL 2927381 (N.D. Tex. July 23, 2010) (adopting magistrate judge's recommendation to grant motion to compel arbitration of all claims and deny as moot alternative motion to transfer venue); Halliburton Energy Services, Inc. v. NL Industries, Inc., No. CIVA H-05-4160, 2006 WL 3949170, at *5 n.2 (S.D.Tex. 2006) (suggesting motion to dismiss for improper venue would be moot in light of arbitration agreement, but for provision in arbitration agreement that preserved right to contest venue); Alemac Ins. Services, Inc. v. Risk Transfer Inc., No. 03 Civ. 1162 (WHP), 2003 WL 22024070, at *6 (S.D.N.Y. Aug 28, 2003) ("Since the broad arbitration clause in the Partnership Agreement encompasses all pleadings before this Court, [the] motion to compel arbitration is granted.  Further, [the] motion to dismiss or to transfer venue is denied as moot.").

be granted and Mr. Slaikeu's motion to stay should be denied.  Mr. Slaikeu's March 25 and April

22, 2014 motions to dismiss for failure to state a claim for relief or transfer should be denied

without prejudice as moot.

**B.      Steamboat**

Steamboat filed two motions to dismiss all claims asserted against it.  On March 25,

Steamboat moved to dismiss the two claims asserted against it in plaintiff's first amended

petition—breach of contract and conversion.  On April 22, Steamboat moved to dismiss the four

claims asserted against it in plaintiff's second amended complaint—the two claims asserted in

the first amended petition as well as trade secret misappropriation and "alter ego and piercing

defendants' (*sic*) corporate veil."  For the purposes of making a comprehensive report to the

District Judge, this report includes an analysis of the portions of Steamboat's two motions to

dismiss that seek dismissal of plaintiff's claims for failure to state a claim for relief.  But,  for the

reasons discussed below, because plaintiff and Steamboat are not diverse, the Court directs

plaintiff and Steamboat to show cause why final judgment should not be entered regarding

plaintiff's claims against Steamboat.

**1.      March 25 motion to dismiss first amended petition**

**a.      breach of contract**

Plaintiff's first amended petition alleges each defendant breached the Contractor

Agreement.  Each of the causes of action in the first amended complaint relate to the Contractor

Agreement.  But, plaintiff does not allege, or demonstrate, Steamboat signed the Contractor

Agreement or is bound by its terms.  Plaintiff's first amended petition otherwise does not include

a particularized statement of facts to show why Steamboat might be held responsible for a breach

29

of the Contractor Agreement by Mr. Slaikeu.[113]   Accordingly, the portion of Steamboat's motion to dismiss that seeks the dismissal of the breach of contact claim in the first amended petition should be **granted** and that claim as directed against Steamboat should be dismissed.

      **b.**    **conversion**

Steamboat seeks dismissal of the cause of action for conversion because, in sum, Steamboat "never entered into an agreement [with plaintiff]," the Contractor Agreement, which is not signed by Steamboat, "directly contradicts the allegations of Plaintiff that Steamboat owed it any duties[.]"[114]   Conversion is the "wrongful exercise of dominion or control over the property of another in denial of, or inconsistent with, the other's rights in the property."[115]   Plaintiff's claim for conversion is briefly stated and is based on plaintiff's assertion that "Defendants have used and continue to use various teaching materials . . . obtained by Defendants[.]"[116] Although,

---

[113]   In its latter-filed second amended complaint, plaintiff alleges an alter-ego relationship between Mr. Slaikeu and Steamboat, which, in theory, could make Steamboat liable for Mr. Slaikeu's alleged breach of contract.  See Cooper v. McDermott Int'l, Inc., No. 93-2907, 1995 WL 450209, at *7-8 (5th Cir. July 6, 1995).  But, neither the first amended petition nor the second amended complaint alleges facts sufficient to make a *prima facie* case for an alter ego relationship. The first amended petition does not identify specific facts to show "such unity between corporation and individual that the separateness of the corporation has ceased" (SEC v. Res.  Dev. Int'l, LLC, 487 F.3d. 295, 302 (5th Cir. 2007 )); it simply ascribes all of Mr. Slaikeu's actions to Steamboat by using the term "defendants" throughout.  In its second amended complaint, plaintiff makes only conclusory assertions and formulaic recitations, unsupported by facts, that Mr. Slaikeu ran Steamboat interchangeably with his own activities, failed to observe corporate formalities, commingled personal and corporate assets, and committed actual fraud through Steamboat.  The Court need not accept these allegations as true.  Plotkin, 407 F.3d at 696.

[114]   Docket no. 24 at 5.

[115]   Robinson v. National Autotech, Inc. , 117 S.W.3d 37, 39 (Tex.App. – Dallas 1990, no writ).

[116]   Plaintiff's first amended petition at 3.

in theory, Steamboat could be liable for a conversion of plaintiff's materials even though Steamboat did not sign the Contractor Agreement,[117] other than conclusory assertions, plaintiff has not provided a particularized statement of facts to show why it understands that Steamboat, apparently a shell company, exercised any dominion and control over any property belonging to plaintiff.  Accordingly, the portion of Steamboat's motion to dismiss that seeks the dismissal of the conversion claim in the first amended petition should be **granted** and that claim as directed against Steamboat should be dismissed.

###     2.    April 22 motion to dismiss second amended complaint

Steamboat filed a motion to dismiss plaintiff's second amended complaint on April 22, 2014.[118]  Plaintiff was required to file a response to the motion within fourteen days.[119]  The docket sheets do not show that plaintiff filed any response to Steamboat's motion.  Thus, the motion should be **granted** and each of plaintiff's claims asserted against Steamboat in the second amended complaint should be dismissed.[120]

---

[117]   See note 113, supra.

[118]   Docket no. 24.

[119]   W. D. TEX. LOCAL COURT RULES, RULE CV-7(c) CV-7(e)(2).

[120]   As discussed above, plaintiff has actively engaged in litigation relating to the matters addressed in this report such that, in accordance with the Fifth Circuit's reasoning in Morella, 2012 WL 45411 at *2, there is no reason to believe plaintiff simply missed a deadline when it failed to respond.  Further, Steamboat's motion to dismiss has merit.  For the same reason Steamboat's motion to dismiss the breach of contract and conversion causes of action as stated in the first amended petition should be granted, Steamboat's request to dismiss the same claims as stated the second amended complaint should be granted.  With respect to the two causes of action alleged for the first time in the second amended complaint—trade secret misappropriation and alter ego/piercing a corporate veil—as discussed, plaintiff has failed to provide a particularized statement of facts in support of either claim.  Finally, each of plaintiff's causes of action against Steamboat appear to require the application of an alter ego theory, but, as discussed, plaintiff's first amended petition and

### 3.    diversity jurisdiction

When Mr. Slaikeu removed the case, he did so based on federal diversity jurisdiction. But, Mr. Slaikeu admits that plaintiff and Steamboat are not diverse and plaintiff appears to agree. Yet, plaintiff has not sought to remand the case and the time for plaintiff to seek a remand based on a defective notice of removal, other than as based on lack of subject matter jurisdiction, has now expired.[121] Specifically, the time for plaintiff to object to the failure of the notice of removal to expressly state both defendants have joined in the removal or any defendant's late consent to removal—defects in removal that are not jurisdictional—has expired.[122]

Steamboat has argued in its motions to dismiss that plaintiff's claims against it should be dismissed due to plaintiff's "fraudulent joinder" to the case—arguments apparently advanced to show, preemptively, why Mr. Slaikeu's removal is not defective because the non-diverse citizenship of Steamboat can be disregarded.[123] As discussed, plaintiff has not provided a

---

second amended complaint do not provide a particularized statement of facts to support the application of that theory sufficient to withstand Rule 12(b)(6) dismissal. See note 113, supra.

[121]   28 U.S.C. § 1447(c); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 69, 117 S.Ct. 467, 473 (1996); Patin v. Allied Signal, Inc., 77 F.3d 782, 786 (5th Cir. 1996).

[122]   Coury v. Prot, 85 F.3d 244, 252 (5th Cir. 1996) (although defendant could not properly remove suit to federal court when defendant was citizen of state where suit was filed, plaintiff waived that defect when it did not file motion to remand within 30 days of removal); Getty Oil Corp. v. Insurance Co. of N. Am., 841 F.2d 1254, 1263 (5th Cir. 1988) (plaintiff did not timely object to defendant's late consent to removal).

[123]   In a suit based on diversity jurisdiction, a party can establish that a non-diverse defendant was improperly joined by showing "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003). A trial court presented with a claim of improper joinder based on the second test must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff

particularized statement of facts sufficient to state a claim against Steamboat in either its first amended petition or second amended complaint (which should be stricken from the record). For the purposes of assessing the propriety of removal at the time of the removal, plaintiff has not established a reasonable basis of recovering against the non-diverse Steamboat; plaintiff's conclusory averments are a legally insufficient factual basis to establish any of the pleaded causes of action.[124]

 Courts can permit certain defects in removal to be cured.[125] For example, the failure of the removal petition to state that removal was sought both by Mr. Slaikeu and Steamboat (the company Mr. Slaikeu appears to admit he controls) might be able to be cured.[126] But, under the teaching of the Fifth Circuit's decision in Coury, plaintiff has waived its right to challenge the

---

might be able to recover against an in-state defendant." Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (term "improper joinder" used in Fifth Circuit instead of "fraudulent joinder").

 [124] Steamboat argued in its motion to dismiss that because Steamboat "never entered into an agreement [with plaintiff]," the Contractor Agreement, which is not signed by Steamboat, "directly contradicts the allegations of Plaintiff that Steamboat owed it any duties" and supports a finding that plaintiff has failed to state any claim for relief against Steamboat. Docket no. 24 at 5. As discussed, this report recommends dismissal of plaintiff's claims against Steamboat and agrees that plaintiff has failed to provide a particularized statement of facts to show why Steamboat has breached a contract with plaintiff, converted plaintiff's property, or misappropriated plaintiff's trade secrets or, under an alter ego theory pleaded expressly for the first time in the second amended complaint (which should be stricken), might be liable for alleged breaches of contract, conversion, and trade secret misappropriation allegedly perpetrated by Mr. Slaikeu. See Smallwood, 385 F.3d at 573.

 [125] See Energy Catering Servs. v. Burrow, 911 F.Supp. 221, 222-23 (E.D. La. 1995) (any defects can be cured in 30-day removal period; defects in allegations of jurisdiction can be corrected, but not to correct the facts themselves or provide new basis for jurisdiction). See also 28 U.S.C. § 1653; Lowery v. Alabama Power Co., 483 F.3d 1184, 1214 n.66 (11th Cir. 2007); Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins., 5 F.3d 963, 969 (6th Cir. 1993) (court granted defendant's motion to file affidavits to clarify allegations of citizenship of partners of plaintiff partnership).

 [126] See notes 122, 125, supra.

removal of this case based on Steamboat being a citizen of Texas,[127] even if its citizenship may not be disregarded under an improper joinder theory.

If the District Court accepts the recommendations in this report, plaintiff and Steamboat will be the only parties remaining in the case.  Yet, each of the causes of action plaintiff has asserted against Steamboat are state law causes of action and both sides appear to agree plaintiff and Steamboat are not diverse.  No party can be held to waive its right to object to a court's lack of subject matter jurisdiction;[128] defects in subject matter jurisdiction can be raised at any time, including *sua sponte* by the court;[129] and, in limited circumstances, a diversity determination can be addressed later than as of the date the complaint was filed in state court and the date the notice of removal was filed in federal court.[130]  Therefore, unless any party presents legal argument and authority to demonstrate otherwise within the time for filing objections to this report, because plaintiff and Steamboat are not diverse, if the District Judge accepts the recommendations in this report, plaintiff's case and claims against Steamboat should be dismissed without prejudice in this Court (such that any further prosecution of plaintiff's state law claims against Steamboat must occur in a state court of competent jurisdiction) based on the Court's lack of subject matter

---

[127]  Coury, 85 F.3d at 252.

[128]  See e.g., id. at 248.

[129]  See e.g., Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 124 S.Ct. 1920 (2004) (post-filing change in citizenship cannot cure lack of subject-matter jurisdiction that existed at the time of filing diversity action); Arena v. Graybar Elec. Co., 669 F.3d 214, 223 (5th Cir. 2012).

[130]  See Knudson v. Systems Painters, Inc., 634 F.3d 968, 975 (8th Cir. 2011) (citizenship of parties can be reconsidered after plaintiff voluntarily dismisses diversity-destroying defendant from state court action); Curry v. U.S. Bulk Transp., 462 F.3d 536, 540 (6th Cir. 2006) (citizenship of parties after removal can be reconsidered based on amended complaint that includes names of previously unidentified defendants).

jurisdiction and the Court should direct the District Clerk to enter final judgment and close the case.

## V.  RECOMMENDATIONS

Based on the foregoing discussion, it is recommended that:

- plaintiff's second amended complaint[131] should be **STRICKEN** on the ground plaintiff had amended once "as a matter of course" in state court prior to removal and did not file a motion seeking leave to amend or obtain the consent of defendants to the amended pleading;

- defendant Erik Slaikeu's motion to compel arbitration and stay case[132] should **be GRANTED in part and DENIED** in part as follows:

  - Mr. Slaikeu's motion to compel arbitration should be **granted** and, in accordance with the terms of the parties' Contractor Agreement, each of plaintiff's claims against Mr. Slaikeu should be submitted to final and binding arbitration administered by the American Arbitration Association under its rules then applicable to the dispute in San Antonio, Texas, or as otherwise mutually agreed by the parties; and

  - because each of plaintiff's claims asserted against Mr. Slaikeu in this case must be arbitrated, and because no party has demonstrated there will be any reason for either plaintiff or Mr. Slaikeu to return to this Court following arbitration, defendant Erik Slaikeu's motion to stay should be **denied**.

- defendant Erik Slaikeu's contingent motions to dismiss plaintiff's first and second amended complaints[133] should be **DENIED as moot** in this proceeding;

- defendant Steamboat Management Group, L.L.C.'s motions to dismiss plaintiff's first and second amended complaints[134] should be **GRANTED** and plaintiff's

---

[131]  Docket no. 14.

[132]  Docket no. 11.

[133]  Docket nos. 12, 23.

[134]  Docket nos. 13, 24.

claims against Steamboat should be dismissed for failure to state a claim for relief;

- within the time for filing objections to this report, plaintiff and Steamboat must **show cause** why final judgment should not be entered in favor of both defendants to close this case in this court;[135] and

- any other requests for relief not expressly granted should be **DENIED**.

If, after consideration of objections, the District Judge accepts the recommendations in this report, the District Judge may direct the District Clerk to enter final judgment in favor of defendants to close the case.

## VI.  INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.  As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(a) and (b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within **14 days** after being served with a copy, unless this time period is modified by the District Court.  A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file timely written objections to the proposed findings,

---

[135] See text at notes 121-130, supra.

conclusions and recommendations contained in this Report will bar the party from receiving a *de novo* determination by the District Court.[136]  Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[137]

**SIGNED** and **ENTERED** this 23rd day of May, 2014.

*Pamela A. Mathy*

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[136]  See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

[137]  Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).