UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

EDUCATION MANAGEMENT
SERVICES, L.L.C.,

      Plaintiff,

v.

ERIK SLAIKEU and STEAMBOAT
MANAGEMENT GROUP, L.L.C.,

      Defendants.

CIVIL NO.  SA-14-CA-135-OLG

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:   **Honorable Orlando L. Garcia**
       **United States District Judge**

Pursuant to the order of referral in the above-styled and numbered cause of action to the

undersigned United States Magistrate Judge[1] and consistent with the authority vested in United

States Magistrate Judges under the provisions of 28 U.S.C. § 636(b) and rule 1 of the Local

Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of

Texas, the following report is submitted for your review and consideration to address defendant

Erik Slaikeu's October 1, 2014 motion to "Vacate Order of Dismissal, Reinstate Case, and

Consolidate With Other Cases for Discovery,"[2] and matters related to that motion.[3]

---

[1]  Docket no. 35 (Oct. 16, 2014).

[2]  Docket no. 30.

[3]  The order of referral notes this case is related to Education Management LLC v. Ahrens, et al., SA-14-CA-116-OG; on October 2, 2014, the District Judge referred defendants' October 1 motion to vacate the order of dismissal in Ahrens to the undersigned.

## I.  JURISDICTION

The Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446(b).

## II.  SELECTED SUMMARY of PROCEDURAL HISTORY, CLAIMS, and ARGUMENTS

On May 23, 2014, the undersigned filed a report which recommended dispositions on five motions: defendant Erik Slaikeu's motion to compel arbitration and stay case pending arbitration; Mr. Slaikeu's separate motions to dismiss the first amended petition and second amended petition of Education Management Services, L.L.C. ("plaintiff"), each subject to Mr. Slaikeu's motion to compel arbitration; and defendant Steamboat Management Group, LLC's ("Steamboat") motions to dismiss plaintiff's first and second amended petitions.[4]  On June 12, 2014 the District Court entered an order adopting the recommendations in the report, and, in sum: (1) granted Steamboat's motion to dismiss and dismissed without prejudice each of plaintiff's claims against Steamboat; and (2) granted Mr. Slaikeu's motion to compel arbitration on each of plaintiff's claims against Mr. Slaikeu, dismissing the claims in this Court with prejudice.[5]  On June 12, 2014, the District Court entered a final judgment in accordance with the District Judge's order.[6]  In his October 1, 2014, motion, Mr. Slaikeu seeks an order setting aside the judgment and order of dismissal and reinstating his case, as well as consolidating it with "other cases."  The May 23, 2014 report and recommendation contains a summary of the

---

[4] Docket no. 25.

[5] Docket no. 27 at 2.

[6] Docket no. 28.

procedural history, claims and arguments in this case through the date the report was filed.
Certain aspects of the procedural history are set out in this report to provide a context for the
discussion of Mr. Slaikeu's October 1 motion.

**A.      Through the District Court's June 12, 2014 Order**

On February 10, 2014, plaintiff filed its first amended petition in state court against
plaintiff and Steamboat, alleging two claims—breach of contract and conversion—against both
defendants.[7]  The first amended petition was the "live" pleading at the time the District Court
entered its order adopting the report and recommendations and ordered entry of final judgment.[8]
In the first amended petition, plaintiff alleges that plaintiff and Mr. Slaikeu "entered into an
agreement entitled 'Contractor Agreement' whereby [Slaikeu] would provide various services on
behalf of Plaintiff," Mr. Slaikeu "agreed not to compete with Plaintiff's businesses," and Mr.
Slaikeu

> agreed to keep all information obtained during the performance of his duties under
> the contract confidential and refrain from using Plaintiff's teaching materials,
> vendor's lists, student testimonials, photographs, and other proprietary
> information owned by Plaintiff for the use and benefit of [Mr. Slaikeu] during and
> after [Mr. Slaikeu] ceased working with Plaintiff's company.[9]

Plaintiff's first amended petition avers that "[i]n or about September of 2013, [Mr. Slaikeu]
ceased working with Plaintiff."[10]  Plaintiff alleges that Mr. Slaikeu subsequently "began working

---

[7]  Docket no. 1, tab 11 ("first amended petition") at 1-9.

[8]  When ruling on the recommendations in the May 23, 2014 report, the District Court struck
plaintiff's later-filed second amended complaint (docket no. 14).  Docket no. 27 at 2.

[9]  First amended petition at 2-3.

[10]  Id.

for a rival seminar business, in direct competition with Plaintiff's business," using "information obtained from Plaintiff while under contract with Plaintiff."[11]   Plaintiff also alleged that, "in violation of the contractor agreement," "[Mr. Slaikeu has] used and continue to use various teaching materials and methods obtained . . . while under contract with Plaintiff, for [his] own benefit."[12]   Plaintiff further alleges that "as part of [Mr. Slaikeu's] and Plaintiff's contractor's agreement, [Mr. Slaikeu] agreed not to solicit, induce, or attempt to induce any past or current supplier, client or customer of the [plaintiff] . . . to do business with any other . . . entity which provides products or performs services materially similar to or competitive with those provided by the Plaintiff."[13]   Plaintiff alleges that Mr. Slaikeu is "currently working with a former vendor/supplier that conducts seminars substantially similar to Plaintiff" in "direct violation of the contract between the parties."[14]   Plaintiff's first amended petition seeks an award of injunctive relief, actual and punitive damages, attorney's fees, pre and postjudgment interest, an accounting, disgorgement of profits, costs, and any other relief to which it may be entitled.[15]

On March 25, 2014, Mr. Slaikeu filed: (a) a combined motion to compel arbitration and stay pending arbitration;[16] and (b) a combined motion to dismiss or transfer venue, "subject to the

---

[11] Id.

[12] Id.

[13] Id.

[14] Id.

[15] Id. at 6-9.

[16] Docket no. 11.

motion to compel arbitration and to stay case pending arbitration (D.E. 11)."[17]  With respect to

his motion to compel arbitration and stay, Mr. Slaikeu argues, in sum, that each of the two claims

plaintiff asserts against him in plaintiff's first amended petition—breach of contract and

conversion—fall within the scope of a mandatory arbitration clause included in an agreement

"Slaikeu executed . . . with Plaintiff in January 2013."[18]  In support of his request for arbitration

and stay, Mr. Slaikeu submits a copy of a  "Contractor Agreement," dated January 18, 2013,[19]

which includes the following provision:

> 4.1  **Disputes Will be Arbitrated**.  Any controversy between Contractor and the
> Company . . . arising from or in any way related to this Agreement, Contractor's
> business relationship with the Company . . . or the termination of Contractor's
> business relationship with the Company . . . shall be resolved exclusively by final
> and binding arbitration administered by the American Arbitration Association
> ["AAA"] under its rules then applicable to the dispute.  Any arbitration shall take
> place only in San Antonio, Texas, or as otherwise mutually agreed by the
> Parties.[20]

Mr. Slaikeu argues the arbitration provision is valid.[21]  Mr. Slaikeu argues that because plaintiff's

claims of breach of contract and conversion arise from or relate to the Contractor Agreement,

they must be arbitrated under the mandatory arbitration provision in that Agreement.[22]

---

[17]  Docket no. 12 at 1 (emphasis removed).

[18]  Docket no. 11 at 1.

[19]  Id., exhibit A ("Contractor Agreement").

[20]  Contractor Agreement at 7.

[21]  Docket no. 11 at 4-5.

[22]  Id. at 5-6.

On the same day Mr. Slaikeu filed the motions noted above, Steamboat filed a motion to dismiss plaintiff's claims alleged against it in the first amended petition.[23]  On April 8, 2014, plaintiff filed separately its second amended complaint,[24] its response to Mr. Slaikeu's March 25 motion to dismiss or transfer venue,[25] and its response to Steamboat's March 25 motion to dismiss.[26]  Plaintiff did not file a response to Mr. Slaikeu's March 25 motion to compel arbitration and stay.  On April 15, 2014, Mr. Slaikeu and Steamboat each filed reply briefs in support of their respective March 25 motions to dismiss.[27]  Mr. Slaikeu's reply was captioned "subject to the motion to compel arbitration and to stay case pending arbitration (D.E. 11)."[28]

On April 22, 2014, Mr. Slaikeu filed a combined motion to dismiss and transfer venue (also captioned "subject to the motion to compel arbitration and to stay case pending arbitration (D.E. 11") directed at plaintiff's second amended complaint.[29]  The same day, Steamboat filed a motion to dismiss plaintiff's second amended complaint.[30]  Plaintiff did not file a response to either motion.

_____

[23] Docket no. 13.

[24] Docket no. 14.

[25] Docket no. 15.

[26] Docket nos. 16.

[27] Docket nos. 18, 19.

[28] Docket no. 18 at 1 (emphasis removed).

[29] Docket no. 23 at 1 (emphasis removed).

[30] Docket no. 24.

On May 23, 2014, the undersigned filed a report and recommendations with regard to the five pending motions.[31]   On June 12, 2014, the District Court entered an order adopting the report and recommendations.[32]   The District Court granted Mr. Slaikeu's motion to compel arbitration, ordering

> in accordance with the terms of the parties' Contractor Agreement, each of Plaintiff's claims against Mr. Slaikeu shall be submitted to final and binding arbitration administered by the American Arbitration Association under its rules then applicable to the dispute in San Antonio, Texas, or otherwise mutually agreed by the parties[.][33]

The District Court denied Mr. Slaikeu's motion to stay the case pending arbitration and dismissed with prejudice plaintiff's claims against Mr. Slaikeu because "where all claims in the district court are referable to arbitration, the district court has the discretion to dismiss the case in favor of arbitration."[34]   The District Court denied as moot Mr. Slaikeu's motions to dismiss plaintiff's first and second amended complaints.[35]   The District Court granted Steamboat's motion to dismiss and dismissed without prejudice all of plaintiff's claims.[36]

---

[31]   Docket no. 25.

[32]   Docket no. 27.

[33]   Id. at 2.

[34]   Id. at 2 n.2.

[35]   Id. at 2.

[36]   Id.

**B.** **After the District Court's June 12, 2014 Order**

**1.** **plaintiff's demand for arbitration**

On August 28, 2014 plaintiff filed a demand for commercial arbitration with the AAA.[37]

Plaintiff alleges it "agreed to extend [Mr.] Slaikeu's arbitration response deadline."[38] The record

does not indicate if Mr. Slaikeu filed a response to the demand for arbitration.

**2.** **Mr. Slaikeu's notice of waiver**

On September 9, 2014, Mr. Slaikeu filed a notice of waiver of the arbitration clause in the

proceedings in this Court.[39] Mr. Slaikeu asserts plaintiff "has filed a total of five (5) lawsuits

against various former independent contractors and/or employees that have been removed to the

Western District of Texas" including the present case.[40] Mr. Slaikeu further argues "Counsel for

[Mr.] Slaikeu is representing each of the former employees" and "Plaintiff filed a demand for

arbitration in this matter on August 28, 2014," but "[a]s a result of the numerous litigation (sic)

and disputes that have been initiated, [Mr.] Slaikeu wishes to waive the right to compel

arbitration in this matter."[41]

---

[37] Docket no. 30 at 4; docket no. 33 at 3.

[38] Docket no. 33 at 3.

[39] Docket no. 29.

[40] Id. at 2.

[41] Id.

### 3.    Mr. Slaikeu's October 1, 2014 motion "to vacate order of dismissal, reinstate case and consolidate with other cases for discovery"

Mr. Slaikeu's October 1 motion[42] seeks to reinstate plaintiff's case against him because, in sum, at the time "they . . . moved to dismiss and alternatively[] to preserve their rights, "they were unaware that multiple similar cases had been filed by Plaintiff" through "the same in-house counsel for Plaintiff who drafted the employment and contractor agreements at issue in the various cases."[43]  Mr. Slaikeu represents "Plaintiff has filed a total of six (6) lawsuits against . . . former independent contractors and/or employees in state court in San Antonio," "[m]ost [of which] have been removed to the U.S. District Court for the Western District of Texas," and in all of which "there [is] an arbitration clause in the respective agreement[.]"[44]  Mr. Slaikeu

---

[42]  Mr. Slaikeu's motion purports to be filed only on his behalf and not also filed for co-defendant Steamboat (who is represented by the same attorneys).  For example, the caption of the motion refers only to Mr. Slaikeu as "Defendant," the introductory paragraph represents it was filed by "Defendant, Erik Slaikeu ("Defendant"), and the proposed order again refers to "Defendant's" motion.  Similarly, the caption, title, and signature block for defendant's reply and amended response to plaintiff's sur-reply each refer only to "defendant" Mr. Slaikeu.  Yet, at the same time, the motion makes references to "defendants" when arguing why the order of dismissal should be set aside.  For example, the motion states, "Defendants now voluntarily waive their right to arbitrate" and "Defendants seek an order vacating the dismissal of this case."  Docket no. 30 at 7.  To be clear, the Court considers Mr. Slaikeu's motion to be seeking relief only on behalf of Mr. Slaikeu.  To the extent the Court should understand the motion to seek relief on behalf of both defendants, the submissions do not demonstrate the dismissal order as it applies to co-defendant Steamboat should be set aside.  Relatedly, to the extent the Mr. Slaikeu's motion may seek relief on behalf of a party in another case (see text at note 87), and asks the Court to consolidate this case with other cases, the motion should be **denied** on the ground Mr. Slaikeu has not demonstrated he has the authorization to represent any party in another case or standing to assert legal arguments on that party's behalf.

[43]  Docket no. 30 at 2, 4.

[44]  Id. at 3.  Mr. Slaikeu identifies the six lawsuits as the instant case as well as: Education Management Services LLC v. Ahrens, et al., Case No. SA-14-cv-116-OLG; Education Management Services, LLC v. Simpson, Case No. SA-14-cv-586-FB; Education Management Services, LLC v. Cadero, Case No. SA-14-cv-587-HLH; Education Management Services, LLC v. Yackey, Case No. SA-14-cv-656-HLH; and Education Management v. Manuel Moreno, Cause No. 2014-CI-4088, in

represents the arbitration agreements "requir[e] arbitration of any disputes before [the] AAA in

San Antonio" and argues "Plaintiff's counsel violated each of those respective agreements by

filing these suits in state court and thereby waived any claim to compel arbitration."[45]  Mr.

Slaikeu asserts, "Defendants seek to reinstate this case and the others for disposition by the

Courts as the most judicial and cost efficient method of dealing with the above and related

cases."[46]

      Mr. Slaikeu's motion makes four main arguments in support of the relief requested.  First,

Mr. Slaikeu argues consolidating the cases in this Court would promote "judicial efficiency and

. . . reduce expenses because the cases deal with the same or similar agreements, the same

witnesses, and much of the same evidence" and "Counsel for Defendants is representing each of

the Plaintiff's and Plaintiff's affiliates' former employees/contractors/vendors who have been

sued in the previously referenced cases;"[47] and otherwise the parties would endure "the cost of

---

the 37th Judicial District Court of Bexar County, Texas.  Id.  This portion of Mr. Slaikeu's briefing
also cites a seventh case, Real Estate Training, Inc. v. Nick Vertucci, et al.; because that case did not
involve an arbitration clause, it is not further discussed.  Id.

      Mr. Slaikeu states that one of the five cases removed to this Court, Education Management
Services, LLC v. Yackey, Case No. 5:14-cv-00656-HLH, "was dismissed for lack of personal
jurisdiction on August 26, 2014, . . . but is subject to a request for arbitration by Plaintiff."  Docket
no. 30 at 4 n.7.  The Court notes that the Court dismissed another of the cases removed to this Court,
Education Management Services, LLC v. Simpson, on September 12, 2014 (19 days before Mr.
Slaikeu filed the motion addressed in this report) based on lack of personal jurisdiction.  See No.
5:14-CV-00586-FB, docket no. 9 (W.D.Tex. Sept. 12, 2014).  Finally, it is noted that in Education
Management Services, LLC v. Cadero, the Court denied defendant's motion to reconsider the order
denying defendant's motion to dismiss for lack of personal jurisdiction on November 17, 2014.

    [45]  Id. at 4.

    [46]  Id. at 6.

    [47]  Id. at 5.

arbitrating each of the claims separately through AAA, including the separate filing fees forum

fees, and hourly charges for each arbitrator, and the judicial inefficiency of having different

arbitrators opine on the validity, enforceability and interpretation in different cases involving

essentially the same agreement."[48]   Second, Mr. Slaikeu argues "[a]rbitration [w]ill [d]eprive

[d]efendants of [s]ubstantive [r]ights" because "different arbitrators reviewing the same

agreement with similar fact patterns and reaching potentially differing results" would be "a

hugely expensive, very imprecise and unwieldy process," "[e]ach arbitrator will charge their own

fee structure for each case," and "legal principles of collateral estoppel and *res judicata* likely

will not be applied if the cases are arbitrated."[49]   Third, Mr. Slaikeu argues "Defendants do not

dispute that the case <u>was</u> subject to arbitration," but "Plaintiff has already waived its right to

compel arbitration," "defendants now waive their right to arbitration" and "there are constraints

external to the Parties' agreement that risk foreclosing the meaningful arbitration of . . . claims"

including "the multiple lawsuits filed by Plaintiff," "the potential for inconsistent results," and

"the multiplicity of [arbitration] fees."[50]   Mr. Slaikeu's fourth "argument," captioned "Motion to

Consolidate for Discovery Purposes," reads, in its entirety, as follows:

> While 6 lawsuits involving arbitration agreements have been filed, the cases are in
> various stages.  Some have been dismissed on the basis of personal jurisdiction,
> but are subject to being re-filed as arbitrations.  Two cases from this same court
> have been referred to arbitration.  For purposes of this motion, and the related
> Motion to Reinstate Case No. 5:14-cv-00116-OLG, <u>Education Management
> Services, LLC v. Ahrens, et al.</u>, in the U.S. District Court for the Western District
> of Texas, San Antonio Division, Defendants will move to enter a common

---

[48] <u>Id.</u>

[49] <u>Id.</u> at 6.

[50] <u>Id.</u> at 7 (original emphasis).

scheduling order for discovery with these cases with separate pre-trial and trial dates, be consolidated to facilitate discovery, and resolution of common legal issues.[51]

### 4.     plaintiff's response

On October 8, 2014, plaintiff filed a response which presents four main arguments in opposition to Mr. Slaikeu's request for reinstatement.[52]  In sum, plaintiff argues: (1) the doctrine of judicial estoppel prevents Mr. Slaikeu from arguing that the Court should vacate its order compelling arbitration, and, further, "[plaintiff] relied on the Court's order and expended considerable time, resources, and money in drafting and filing its demand for arbitration and paying for the AAA's filing fees;"[53] (2) Mr. Slaikeu presents no authority compelling arbitration will deprive him of substantive rights, and, further, he cannot "[provide] the Court a substantial justification under FED R. CIV. P. 60(b)(6) to vacate its previous judgment and order compelling this suit to arbitration" because mere "unfavorable consequences" to the movant and movant's "poor strategic decision[-making]" are insufficient;[54] (3) Mr. Slaikeu's attack on the cost and efficiency of arbitration "is incorrect and beside the point" because Mr. Slaikeu presents no evidence the costs are prohibitively expensive,[55] and under the Federal Arbitration Act,

---

[51]  Docket no. 30 at 6-7.

[52]  Docket no. 33.

[53]  Id. at 5.

[54]  Id. at 6-7 (citations omitted).

[55]  Id. at 8.

arbitration should proceed even if it creates "piecemeal litigation,"[56] and (4) arbitrators are the appropriate decision makers as to "how the arbitration will proceed," including discovery matters.[57]

### 5.    Mr. Slaikeu's reply

On October 15, 2014, Mr. Slaikeu filed a reply in support of his motion.[58] In sum, the reply argues: (1) "Plaintiff is confusing judicial admissions of fact with judicial estoppel, effectively arguing that a party can never change a procedural position," the "arbitration option was raised as an alternative forum to dismissal of each complaint,"[59] and "Defendants sought disposition of the case and, therefore, invoked the judicial process in doing so, just like Plaintiff invoked the judicial process by filing the suits in state court;"[60] (2) Mr. Slaikeu's motion to vacate the order is warranted under FED R. CIV. P. 60(b)(6) because the fact that "arbitration is now an inefficient means of resolving the disputes" is a "reason[] that justifies relief," and Mr. Slaikeu's moving to compel arbitration is not the result of a 'poor strategic decision' because "[h]ad it been apparent at the time of filing [Mr. Slaikeu's motion to compel arbitration] that Plaintiff intended to file not three, but six lawsuits, arbitration would not have been a factor;"[61]

---

[56] Id. at 9-10 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927 (1983)).

[57] Id. at 10-11.

[58] Docket no. 34.

[59] Id. at 4.

[60] Id.

[61] Id. at 5.

(3) arbitration is not the correct forum to resolve the dispute because "Plaintiff's lawsuits . . . involve essentially the same [contractual] terms, clauses and issues" and "there is little value in different arbitrators reviewing the same agreement with similar fact patterns and reaching different results;"[62] (4) plaintiff's case authority in support of its argument "arbitration should move forward even if the process creates piecemeal litigation" is "distinguishable" because "[h]ere there are multiple litigants fighting in different forums"[63] and (5) the Court should consolidate discovery in this case with Case No. 5:14-cv-00116-OLG, Education Management Services, LLC v. Ahrens, because "[t]here is no indication that this matter or [Ahrens] will be before the same arbitrator for . . . consolidation [in arbitration] to occur."[64]

### 6.    plaintiff's sur-reply

On October 22, 2014, plaintiff filed a motion for leave to file a sur-reply.[65]  On October 27, 2014, the District Court granted plaintiff's motion.[66]  In its sur-reply, plaintiff argues it "never waived its right to enforce arbitration," because "the mere filing a lawsuit before engaging in arbitration does not cause a party to waive its arbitration rights."[67]  Plaintiff argues waiver only occurs if Mr. Slaikeu incurred a "substantial detriment or prejudice" as a result of plaintiff's lawsuit, which he did not, because plaintiff "has not propounded any discovery upon Defendant

---

[62] Id.

[63] Id. at 6 (internal quotation removed).

[64] Id.

[65] Docket no. 36.

[66] Docket no. 38.

[67] Docket no. 39 at 2.

Slaikeu" and after removing the case to federal court, Mr. Slaikeu "became the aggressor" by filing "multiple dispositive motions" and now "is playing fast and loose with the judicial system by moving this Court to reinstate the case, even after the Court granted the relief they (sic) (twice) requested."[68]  Plaintiff argues it has the right to file suit without waiving arbitration to preserve its judicial rights because filing an arbitration does not toll the limitations period, and notes that it "purposefully did not object" after Mr. Slaikeu sought to compel arbitration and "embraced the [arbitration] process by filing its arbitration demand" after the Court ordered the case compelled to arbitration.[69]  Further, plaintiff argues Mr. Slaikeu did not "preserve his right to choose the most strategically advantageous forum" by filing both a motion to dismiss and a motion to compel arbitration because if a court finds the claims to be arbitrable, it must "order the parties to arbitration as quickly as possible," as did the District Court.[70]

### 7.  Mr. Slaikeu's response to plaintiff's sur-reply

On November 3, 2014, Mr. Slaikeu filed a response to plaintiff's sur-reply[71] and, on November 6, 2014, an amended response to plaintiff's sur-reply.[72]  Mr. Slaikeu argues plaintiff demonstrated a "disinclination to arbitrate" by filing suit "solely to obtain a judicial ruling on the merits of the claims against [Mr. Slaikeu]," noting that plaintiff sought injunctive relief in state

---

[68]  Id. at 3.

[69]  Id. at 4-5.

[70]  Id. at 5 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 21-22, 103 S.Ct. at 940-41).

[71]  Docket no. 40.

[72]  Docket no. 41.

court without initiating arbitration.[73]  Mr. Slaikeu argues the case authority plaintiff cites for the

proposition it was entitled to file suit to avoid barring by the statute of limitations without

affecting its right to arbitration is inapposite, and, additionally, plaintiff proceeded to engage the

judicial process in the course of responding to Mr. Slaikeu's motion to dismiss and in filing its

first amended complaint and second amended complaint.[74]

### III.  STANDARD

Federal Rule of Civil Procedure 60(b) addresses relief from a judgment or order and

states, in part:

> (b) Grounds for relief from a Final Judgment, Order or Proceeding.  On motion
> and just terms, the court may relieve a party or its legal representative from a final
> judgment, order, or proceeding for the following reasons:
>> (1)  mistake, inadvertence, surprise, or excusable neglect;
>> (2)  newly discovered evidence that, with reasonable diligence, could not
> have been discovered in time to move for a new trial under Rule 59(b);
>> (3)  fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
>> (4)  the judgment is void;
>> (5)  the judgment has been satisfied, released or discharged; it is based on
> an earlier judgment that has been reversed or vacated; or applying it prospectively
> is no longer equitable; or
>> (6)  any other reason that justifies relief.

The catch-all  provision set out in Rule 60(b)(6) entitles the moving party to relief when

"extraordinary circumstances" are present.[75]

---

[73]  Id. at 1-2.

[74]  Id. at 4-6.

[75]  Rocha v. Thaler, 619 F.3d 387, 400 (5th Cir. 2010) (quoting Williams v. Thaler, 602 F.3d 291, 311 (5th Cir. 2010)).

## IV.  ANALYSIS

The Federal Arbitration Act ("FAA") generally governs arbitration provisions in contracts involving interstate commerce[76] and creates a "federal policy favoring arbitration."[77]  The FAA provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[78]

When determining whether to compel arbitration, the United States Court of Appeals for the Fifth Circuit applies a two-prong test.  First, the court must determine whether the parties agreed to arbitrate the dispute and, if so, whether the issues raised are within the scope of that agreement.[79]  "When deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts,'"[80] and "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[81]  Further, "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'"[82]  Second, if

---

[76]  9 U.S.C. § 9.

[77]  Moses H. Cone Mem'l Hosp., 460 U.S. at 24, 103 S.Ct. at 941.

[78]  9 U.S.C. § 2.

[79]  Texaco Exploration & Prod. Co. v. AmClyde Engineered Prod. Co. Inc., 243 F.3d 906, 909 (5th Cir. 2001); Harvey v. Joyce, 199 F.3d 790, 793 (5th Cir. 2000).

[80]  Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924 (1995)).

[81]  Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 166 (5th Cir. 2004).

[82]  Webb, 89 F.3d at 258 (quoting Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1253-54 (1989); see also Moses H. Cone Mem'l

the court finds a valid and enforceable agreement to arbitrate encompassing the claims at issue, the court must then determine "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'"[83]  Under this second prong, the party resisting arbitration "should be held to" its "bargain to arbitrate" "unless "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."[84]  If the court finds no such restriction, "arbitration is mandatory."[85]

It is within this framework that the Court evaluates whether "extraordinary circumstances" are present as required under FED R. CIV. P. 60(b)(6) to justify vacating the order compelling arbitration.[86]  Mr. Slaikeu presents four main arguments in support of his request that the judgment and order of dismissal be set aside:

- arbitration is inefficient and does not promote judicial economy, in light of the pendency of other similar lawsuits;

- separately arbitrating each similar lawsuit would be expensive;

- arbitration will deprive defendants of substantive rights; and

---

Hosp., 460 U.S. at 24-25, 103 S.Ct. at 941 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

[83]  Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3355 (1985)).

[84]  Mitsubishi Motors Corp., 473 U.S. at 628, 105 S.Ct. at 3354-55.

[85]  Ellison v. Fannie Mae, Civil Action No. 3:05-CV-1155-G, 2007 WL 2089368 at *3 (N.D.Tex. Jul. 23, 2007).

[86]  Mr. Slaikeu argues Rule 60(b)(6) ("any other reason that justifies relief") is the standard applicable to his motion, not any other Rule or provision of Rule 60.  See docket no. 34 at 5.

- plaintiff waived its right to arbitration.

Except for the issue of waiver, Mr. Slaikeu cites no legal authority to support his arguments; his briefing merely emphasizes the alleged convenience and uniformity that vacating the order and consolidating the cases would provide him.  Mr. Slaikeu does not argue that plaintiff's two claims—breach of contract and conversion—are outside the scope of the arbitration clause, nor does he argue that Congress has imposed a legislative restriction on the arbitrability of these two claims.  It therefore appears that the underlying basis of Mr. Slaikeu's motion is that the arbitration provision should not be enforced because it is invalid under Texas law, as demonstrated by the four principle arguments he presents. Thus, this report addresses the four arguments in the order in which each has been presented.

## A.    Threshold Question: Standing

As a threshold matter, the Court addresses standing.  Even if this Court were to conclude it would be proper to reinstate plaintiff's claims against Mr. Slaikeu for any of the four general grounds advanced, Mr. Slaikeu does not present authority to show it would be proper for this Court to reinstate any dismissed claim against any other party, to include the claims this Court dismissed against co-defendant Steamboat in this case or any aspect of the two cases already dismissed for want of personal jurisdiction by *other judges* of this Court.  No matter how economical or efficient, Mr. Slaikeu has not demonstrated he has the authority to state positions affecting the rights of any other party in this or the other cases at issue.  Thus, to the extent Mr. Slaikeu seeks a court order on behalf of any party other than Mr. Slaikeu the request must be

denied on the ground Mr. Slaikeu has not demonstrated he has standing to argue on behalf of any party other than himself.[87]

## B.      Inefficiency and Lack of Judicial Economy

In Dean Witter Reynolds, Inc. v. Byrd, the United States Supreme Court resolved a split in the federal circuits as to "whether, when a complaint raises both federal securities claims and pendent state claims, a Federal District Court may deny a motion to compel arbitration of the state-law claims despite the parties' agreement to arbitrate their disputes."[88]  The Fifth, Ninth and Eleventh Circuits permitted denial of such a motion based on the "doctrine of intertwining," meaning, "[w]hen arbitrable and nonarbitrable claims arise out of the same transaction, and are sufficiently intertwined factually and legally, the district court . . . may in its discretion deny arbitration as to the arbitrable claims and try all the claims together in federal court."[89]  These courts embraced the doctrine of intertwining, in part, because of "efficiency; by declining to compel arbitration, the court avoids bifurcated proceedings and perhaps redundant efforts to litigate the same factual questions twice."[90]  Contrarily, the Sixth, Seventh and Eighth Circuits held that the district court may not deny such a motion because the FAA "both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate, and 'not substitute [its] own views of economy and efficiency' for those of

---

[87] See notes 42, 44.

[88] 407 U.S. 213, 214,105 S.Ct. 1238, 1239 (1985).

[89] Id., 470 U.S. at 216-17, 105 S.Ct. at 1240.

[90] Id., 470 U.S. at 217, 105 S.Ct. at 1240.

Congress."[91]   Resolving the issue in favor of the latter view, the Supreme Court held the FAA

"requires district courts to compel arbitration of pendent arbitrable claims when one of the parties

files a motion to compel, even where the result would be the possibly inefficient maintenance of

separate proceedings in different forums."[92]

Dean Witter endorsed the strong federal policy favoring arbitration, holding that an

arbitrable claim must be compelled to arbitration if a party so moves, notwithstanding the

possible efficiency arising from consolidating nonarbitrable claims with arbitrable claims and

trying them together in district court.   Mr. Slaikeu moved to compel arbitration of plaintiff's two

claims, and, agreeing with Mr. Slaikeu's arguments that the arbitration provision was valid and

encompassed both claims, the District Court ordered that the claims be arbitrated.   Under Dean

Witter, the Court lacks discretion to deny arbitration of an arbitrable claim, notwithstanding an

argument that arbitration is less efficient than trying all claims (arbitrable and non-arbitrable)

together in a judicial forum.[93]

---

[91] Id., 470 U.S. at 217, 105 S.Ct. at 1240-41 (quoting Dickinson v. Heinold Sec., Inc., 661 F.2d 638, 646 (7th Cir. 1981)).

[92] Id., 470 U.S. at 217, 105 S.Ct. at 1241.

[93] See also Tai Ping Ins. Co., Ltd. v. M/V/ Warschau, 731 F.2d 1411, 1146 (5th Cir. 1984) ("To the extent that [a party resisting arbitration] relies on premises of economy of effort . . . Moses Cone indicates that this reliance is misplaced."); Safety Nat'l Cas. Corp. v. Bristol-Myers Squibb Co., 214 F.3d 562, 564 (5th Cir. 2000) (same); Rush v. Oppenheimer & Co., 779 F.2d 885, 891 (2d Cir. 1985) ("[A] district court may not, on considerations of judicial economy, refuse to stay the proceedings before it in favor of arbitration."); Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 391 n.8 (1st Cir. 1993) (same); Thi of Georgia at Shamrocki, LLC v. Fields, No. CV 313-032, 2103 WL 6097569, at *5 (S.D.Ga. Nov. 18, 2013) (rejecting attempt to avoid arbitration of arbitrable claims in lawsuit because other claims were not governed by an arbitration agreement; "Defendants contend that the matter should therefore not be arbitrated in the interests of judicial economy [but] [t]his argument is counter to the FAA's policy favoring arbitration and is otherwise manifestly without merit."); Gov't Employees Ins. Co. v. Grand Med. Supply, Inc., No. 11 Civ.

Mr. Slaikeu's attempt to distinguish <u>Dean Witter</u> on the ground that in this case "there are multiple litigants fighting in different forums" is unavailing.  Under <u>Dean Witter</u>, to the extent that any one of the arguably similar cases identified by Mr. Slaikeu involves an arbitrable claim, and a party has moved to compel arbitration of that claim, the Court lacks the discretion to deny the arbitration of that claim on the basis that judicial resolution would promote "economy or efficiency."  Indeed, as the Supreme Court recently confirmed, courts must look no further than the arbitrability of a particular claim when determining whether to compel arbitration: "[C]ourts must examine a complaint with care to assess whether *any individual claim* must be arbitrated," and "[t]he failure to do so is subject to immediate review."[94]

## C.    Costs of Arbitration

Mr. Slaikeu argues the "hugely expensive" cost of "arbitrating each of the claims separately through AAA, including the separate filing fees, forum fees, and hourly charges for each arbitrator" compels reinstating the case in district court and consolidating it with similar cases.[95]  "'[A] party seeking to avoid arbitration on the ground that arbitration would be prohibitively expensive' bears the burden of showing the likelihood of incurring prohibitive

---

5339(BMC), 2012 WL 2577577, at *7 (E.D.N.Y. Jul. 4, 2012) ("[P]laintiffs fail to appreciate that under the FAA, [the court] cannot deny a party its contractual right to arbitrate because [it] believe[s] considerations of efficiency or the goal of avoiding inconsistent judgments should take precedence."); <u>Irwin v. UBS Paine Webber, Inc.</u>, 324 F.Supp.2d 1103, 1111 (C.D.Cal. 2004) (argument compelling arbitration would require "multiple proceedings," one judicial and one arbitral, "not an appropriate reason" to deny motion to compel arbitration).

[94] <u>KPMG LLP v. Cocchi</u>, __U.S.__, __, 132 S.Ct. 23, 26 (2011) (per curium) (emphasis added).

[95] Docket no. 30 at 5-6.

costs."[96]  The party must show "*some* specific information of future costs,"[97] and "the likelihood of incurring such costs."[98]

Again, Mr. Slaikeu's argument does not attack the <u>validity</u> of the arbitration provision based on purportedly high costs to arbitrate.[99]  Rather, Mr. Slaikeu simply argues that fulfilling the contractual obligation to arbitrate has become more costly in light of the multiple similar lawsuits that Mr. Slaikeu discovered had been filed after he moved to compel arbitration and now, on balance, *he has determined* it would be less expensive to proceed in court: "Had it been apparent at the time of filing [Mr. Slaikeu's motion to compel arbitration] that Plaintiff intended to file not three, but six lawsuits, arbitration would not have been a factor."[100]  This argument is unavailing.  In Texas, "contractual obligations cannot be avoided simply because the obligor's performance has become more economically burdensome than anticipated."[101]  Further, even if

---

[96]  <u>Primerica Life Ins. Co. v. Brown</u>, 304 F.3d 469, 471 n.1 (5th Cir. 2002) (quoting <u>Green Tree Fin. Corp. v. Randolph</u>, 531 U.S. 79, 91-92, 121 S.Ct. 513, 517 (2000))

[97]  <u>In re FirstMerit Bank, N.A.</u>, 52 S.W.3d 749, 756 (Tex. 2001); <u>see also</u>  <u>Green Tree</u>, 531 U.S. at 92, 121 S.Ct. at 522; <u>Perez v. Lemarroy</u>, 592 F.Supp.2d. 924, 935 (S.D.Tex. 2008); <u>Redish v. Yellow Transp., Inc.</u>, No. 3-07-CV-1065-O, 2008 WL 2572658, at *5 (N.D.Tex. Jun. 24, 2008); <u>Bowie v. Edison Sec. Co.</u>, no. Civ. 300CV2700H, 2001 WL 1076128, at *3 (N.D.Tex. Sept. 11, 2001) ("The 'risk' of prohibitive fees, without more, is too speculative to invalidate the Arbitration Clause.").

[98]  <u>Green Tree</u>, 531 U.S. at 92, 121 S.Ct. at 522; <u>In re FirstMerit Bank, N.A.</u>, 52 S.W.3d at 756.

[99]   <u>See</u> <u>Perez</u>, 592 F.Supp.2d. at 934 ("An arbitration agreement may be substantively unconscionable if the existence of large arbitration costs could preclude a litigant from vindicating her federal statutory rights.").  <u>See also</u> <u>Primerica Life Ins.</u>, 304 F.3d at 471 n.1.

[100]  Docket no. 34 at 5.

[101]  <u>J.L. Huffines v. Swor Sand & Gravel Co., Inc.</u>, 750 S.W.2d 38, 40 (Tex.App.–Fort Worth, 1988, no writ).

the argument did address the validity of the arbitration provision, Mr. Slaikeu does not present any specific information concerning the cost of his (or any other defendant's) arbitration of plaintiff's claims, the likelihood that such costs actually will be incurred, and evidence regarding the comparative costs to litigate in court.  Finally, Mr. Slaikeu presents no evidence to demonstrate the other cases at issue—which, according to Mr. Slaikeu, are similar and each subject to arbitration before the AAA in San Antonio, Texas—could not be consolidated in arbitration or that matters addressed in one case (for example, evidence or determinations) could not potentially be used in any other case.

**D.    Deprivation of Substantive Rights**

Mr. Slaikeu does not specify his specific "substantive rights" at issue, but complains of several aspects of arbitrating each of the lawsuits separately: the risk of "different arbitrators reviewing the same agreement with similar fact patterns and reaching potentially differing results;" the arbitration process being "hugely expensive, very imprecise and unwieldy;" the risk of "[e]ach arbitrator . . . charg[ing] their own fee structure for each case;" and "legal principles of collateral estoppel and *res judicata* likely will not be applied."  Mr. Slaikeu does not provide authority to show that any of those reasons demonstrate a deprivation of a substantive right.

As discussed, Mr. Slaikeu's arguments concerning the purported inefficiency and high cost of separately arbitrating each lawsuit are insufficient to invalidate the arbitration provision. To the extent Mr. Slaikeu argues that the potential for inconsistent results and the inapplicability of collateral estoppel and *res judicata* deprive *him* of "substantive rights," his argument is not availing for two main reasons.  First, courts repeatedly have held that the potential for inconsistent results is not a defense under the FAA to the enforcement of an arbitration

provision.[102]   Second, courts have held that such an attack is not an attack on the validity of the

arbitration provision based on a violation of a substantive right, but an argument "about the

fairness of arbitration generally"—an issue that the arbitrator, not the Court, should address.[103]

"Generally, objections to the nature of the arbitral proceedings are for the arbitrator to decide in

the first instance . . . [f]airness objections should generally be made to the arbitrator subject only

to limited post-arbitration judicial review as set forth in section 10 of the FAA."[104]

## E.   Waiver

Finally, Mr. Slaikeu argues the dismissal order should be set aside because plaintiff

waived its right to arbitration.  Under the FAA, "[t]here is a strong presumption against finding a

---

[102]   Reliance Ins. Co. v. Raybestos Products Co., 382 F.3d. 676, 678-79 (7th Cir. 2004) (rejecting policy argument that arbitration should not be enforced because "inconsistent results are possible," noting "At its core, [plaintiff's] argument is that it is unfair to force it to litigate and to arbitrate the same legal and factual issues with different parties.  The short answer to this is that the Federal Arbitration Act (FAA) makes no exception to the enforceability of arbitration clauses when this type of inefficiency exists."); In re Prudential Ins. Co. of America Sales Practice Litigation All Agent Actions, 133 F.3d 225, 234 (3d Cir. 1998) (cert. denied, 525 U.S. 817, 119 S.Ct. 55 (1998)) (reversing district court's denial of arbitration based on "potential 'inconsistent results and inefficiencies' given the dozens of putative class actions against [defendant]," holding "[w]hile we share the district court's apprehension toward inconsistent results and inefficiencies caused by arbitration, we cannot frustrate the enforcement of the arbitration clause pursuant to the [FAA] on the basis of this concern."); Gov't Employees Ins. Co., 2012 WL 2577577, at *7 ("goal of avoiding inconsistent judgments" does not trump "contractual right to arbitrate").

[103]   See Jones v. Halliburton Co., 625 F.Supp.2d 339, 346-48 (S.D.Tex. 2008) (rejecting argument that arbitration agreement was substantively unconscionable where plaintiff alleged sexual harassment and abuse and compelling arbitration in private would be an "inadequate deterrent" of similar conduct toward other women).

[104]   Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co., 304 F.3d 476, 487 (5th Cir. 2002); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30-31, 111 S.Ct. 1647, 1654-55 (1991) (rejecting "generalized attacks on arbitration," including argument that arbitration provision at issue should not be enforced because arbitration would result in "lack of public knowledge of employers' discriminatory policies, an inability to obtain effective appellate review, and a stifling of the development of the law.")

waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden."[105]  "The question of what constitutes a waiver of the right of arbitration depends on the facts of each case."[106]  To demonstrate waiver requires satisfying a two-prong inquiry: "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."[107]

As to the first prong of the test, "a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."[108]  This standard does not squarely apply here because plaintiff has not moved to compel arbitration.  Plaintiff simply did not oppose Mr. Slaikeu's motion to compel arbitration, and then proceeded to file an arbitration demand after the District Court dismissed the case in favor of arbitrating all claims.  Nevertheless, "the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process, unless an exception applies."[109]  Plaintiff filed suit, seeking a determination on the merits of its claims (as opposed to only seeking a declaration as to the validity of the arbitration agreement), without referencing or asserting its right to arbitrate.  The Court determines that plaintiff substantially invoked the judicial process.

---

[105]  Republic Ins. Co. v. Paico Receivables, LLC, 383 F.3d 341, 344 (5th Cir. 2004) (citing Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 326 (5th Cir. 1999)).

[106]  Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416, 420 (5th Cir. 1985).

[107]  Republic Ins. Co., 383 F.3d at 344 (quoting Subway Equip Leasing Corp., 169 F.3d at 326).

[108]  Id. (quoting Subway Equip Leasing Corp., 169 F.3d at 328).

[109]  Nicholas v. KBR, Inc., 565 F.3d 904, 908 (5th Cir. 2009).

As to the second prong, the detriment or prejudice to Mr. Slaikeu, "[t]hree factors are particularly relevant:"

> First, while discovery relating to non-arbitrable claims is not prejudicial, where the pretrial activity was related to all of the parties' claims, including those that were conceded to be arbitrable, arbitration would result in prejudice[;] Second, the time and expense incurred in defending against a motion for summary judgment could prejudice the party opposing arbitration[;] Third, a party's failure to timely assert its right to arbitrate a dispute is also relevant to the prejudice determination.[110]

Plaintiff asserts, and Mr. Slaikeu does not contest, that no discovery has been conducted in this case. Further, the record does not indicate that any party has sought summary judgment on any claims. As to the third point, it cannot be said that plaintiff did not "timely assert its right to arbitrate" because plaintiff did not move to compel arbitration—Mr. Slaikeu did. Further, plaintiff did not resist Mr. Slaikeu's motion to compel arbitration. After removal, plaintiff did file a perfunctory response to Mr. Slaikeu's motion to dismiss plaintiff's first amended petition and a second amended complaint, but plaintiff never filed a response to Mr. Slaikeu's motion to compel arbitration. Between the time plaintiff initiated its lawsuit in state court on January 22, 2014, and the court filed its report on May 23, 2014, recommending that all claims be compelled to arbitration and the case be dismissed, only four months had elapsed, during which time no discovery was conducted. Under these circumstances, the Court concludes that Mr. Slaikeu was not prejudiced, within the meaning of the applicable standard, by plaintiff's failure to invoke its arbitration rights. In sum, Mr. Slaikeu has not shown plaintiff waived its right to arbitrate its claims. Therefore, Mr. Slaikeu has not met his burden to show that relief from the district court's order compelling arbitration and closing the case is warranted.

---

[110] Republic Ins. Co., 383 F.3d at 346 (internal citations omitted).

## V.  RECOMMENDATIONS

Based on the foregoing discussion, it is recommended that:

- Mr. Slaikeu's motion to vacate the order of dismissal, reinstate the case, and consolidate with other cases for discovery[111] should be **DENIED**; and

- any requests for relief not expressly granted should be **DENIED**.

If, after consideration of objections, the District Judge accepts the recommendations in this report, final judgment in favor of defendants will stand and the case will remain closed.

## VI.  INSTRUCTIONS FOR SERVICE AND NOTICE
## OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.  As provided in  28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(a) and (b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within **14 days** after being served with a copy, unless this time period is modified by the District Court.  A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a *de*

---

[111]  Docket no. 30.

*novo* determination by the District Court.[112]  Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[113]

      **SIGNED** and **ENTERED** this 20th day of November, 2014.

*Pamela A. Mathy*

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[112]  See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

[113]  Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).